En el Tribunal Supremo de Puerto Rico

| IN RE: | |
| --- | --- |
| SIXTO MOREIRA AVILLAN<br>    QUERELLADO<br><br>    V. | CONDUCTA<br>PROFESIONAL<br><br>98TSPR152 |

Número del Caso: CP-96-1

Abogados de la Parte Querellante: HON. CARLOS LUGO FIOL
PROCURADOR GENERAL

LIC. CYNTHIA IGLESIAS QUIÑONES
PROCURADORA GENERAL AUXILIAR

Abogados de la Parte Querellada: LIC. PRISCILA MOREIRA AVILLAN
LIC. LUIS BLANCO MATOS

Abogados de la Parte Interventora:

Tribunal de Instancia:

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 11/13/1998

Materia:

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Sixto Moreira Avillán                    CP-96-1        CONDUCTA
                                                        PROFESIONAL


OPINION DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LOPEZ

San Juan, Puerto Rico a 13 de noviembre de 1998

El 11 de enero de 1996, el Procurador General de Puerto Rico radicó una querella contra el licenciado Sixto Moreira Avillán[1] --admitido por

---

[1] El 30 de junio de 1993 comenzaron los procedimientos disciplinarios en el caso de epígrafe con la presentación de una queja por parte de la señora Suzie Pacheco Martínez ante este Tribunal en contra de los licenciados Sixto Moreira Avillán y Ralph J. Rexach por alegados actos negligentes en la autorización de una escritura pública donde la quejosa compareció como otorgante. A los fines de evaluar la queja presentada por la Sra. Pacheco Martínez, el 15 de octubre de 1993 referimos este asunto a la Oficina del Procurador General para su investigación e informe respecto a la imputación hecha por la quejosa al efecto de que cuando revisó una alegada copia certificada de la escritura en controversia notó que ella nunca llegó a estampar sus iniciales en la primera página de tal instrumento público, sino que las mismas habían sido falsificadas.

El 15 de marzo de 1995, el Procurador General nos sometió su Informe Sobre Conducta Profesional, en el cual señaló que el Lcdo. Moreira Avillán no

este Tribunal al ejercicio de la abogacía el 10 de enero de 1986 y al del notariado el 28 de febrero siguiente—en la cual le imputó cuatro cargos disciplinarios, a saber: (1) que no recogió las iniciales de los comparecientes en la primera página de la escritura pública número 73 en el mismo día natural de su otorgamiento; (2) que las iniciales S.P.M. que aparecen en la primera página de la escritura número 73 no fueron escritas por la otorgante Suzie Pacheco Martínez y que el querellado cambió posteriormente el título del mencionado instrumento público, para omitir la palabra "Liberación", sin informárselo a las partes; (3) que no hizo constar en la referida escritura la existencia de todas las cargas que gravaban a la propiedad objeto del negocio jurídico; y (4) que tardó cuatro años en conseguir que las escrituras públicas número 73, 74 y 75 lograran acceso al Registro de la Propiedad[2], habiéndose comprometido a inscribirlas y sin notificar a las partes que la demora

procedió con el mejor juicio a la hora de autorizar la referida escritura. Visto el Informe del Procurador General, el 7 de abril de 1995 le concedimos término al Lcdo.Moreira Avillán para que compareciera por escrito a mostrar causa por la cual no debíamos disciplinarlo.

Posteriormente, este Tribunal le ordenó al Procurador General, mediante resolución del 2 de junio de 1995, que procediera a formular la correspondiente querella disciplinaria. Con respecto al Lcdo. Rexach, el 7 de abril mencionado, decretamos el archivo de la queja en su contra.

[2] La escritura número 73 sobre segregación y compraventa, la escritura número 74 de primera hipoteca a favor de R & G Mortgage Corp. y la escritura número 75 sobre segunda hipoteca a favor del Municipio de Gurabo

se debía a su negligencia y a otros errores que impedían su inscripción.

El 23 de diciembre de 1996, Moreira Avillán radicó la correspondiente contestación a la querella. En la misma negó la veracidad de los hechos que se le imputaban y solicitó la desestimación y archivo de la querella. Designamos al licenciado Agustín Mangual Hernández como Comisionado Especial para que recibiera la prueba que tuvieran a bien presentar las partes y rindiera un informe a este Tribunal con las determinaciones de hechos que entendiera procedentes. El 2 de junio de 1997, el Comisionado Especial rindió su Informe.[3]

I

De las determinaciones de hechos realizadas por el Comisionado Mangual Hernández se desprende que el Lcdo. Moreira Avillán fue contratado por el Lcdo. Ralph J. Rexach, del Bufete Rexach & Picó, para que autorizara unas

---

fueron otorgadas ante el notario querellado el 5 de marzo de 1987.

[3] De los autos surge que el 7 de abril de 1997 se celebró la vista evidenciaria ante el Comisionado Especial y a ésta comparecieron tanto el querellado como el Procurador General. Las partes estipularon que se admitieran en evidencia, entre otros documentos, copias de las escrituras número 73, 74 y 75. La representación legal del Procurador General ofreció prueba documental y testifical consistente en el testimonio de la Sra. Pacheco Martínez y el señor Héctor Maldonado Rivera, perito examinador de documentos dudosos. El querellado ofreció su propio testimonio, el del Lcdo. Rexach y cierta prueba documental. A base de la evidencia aportada durante dicha

escrituras relacionadas con el cierre de las ventas de unas casas en una urbanización desarrollada en Gurabo por la L & S Gurabo Corporation.

De conformidad con lo anterior, el Lcdo. Moreira Avillán compareció el 5 de marzo de 1987 a las oficinas de R & G Mortgage Corp. para autorizar las escrituras número 73, 74 y 75, en las cuales aparecía como compradora las Sra. Pacheco Martínez.

Según expone el Comisionado, al momento de redactarse la escritura número 73, sobre segregación y compraventa, se consignó en la misma que iba a comparecer en representación de la vendedora, L & S Gurabo Corporation, el señor Nelson Cuevas Hernández. Sin embargo, quien alegadamente compareció el día del otorgamiento fue la señora Lizzette Santana. Luego del otorgamiento, el Lcdo. Moreira Avillán se percató de ese hecho y, acto seguido, les indicó a los comparecientes que sustituiría la primera página de la escritura y que se comunicaría con ellos cuando efectuara el cambio.[4] El Comisionado nos informa que la Sra. Pacheco Martínez declaró que el querellado nunca se comunicó con ella a los efectos de que compareciera ante él para plasmar sus iniciales en la primera página.

---

audiencia, el Comisionado formuló sus determinaciones de hechos.

[4] Esto debido a que los mencionados instrumentos públicos fueron preparados en el Bufete Rexach & Picó y enviados a R & G Mortgage Corp..

Con posterioridad a que se otorgara la escritura número 73, el Lcdo. Moreira Avillán se trasladó a la urbanización Parque Las Américas, donde reside la Sra. Pacheco Martínez, con el propósito de entregarles copia de escrituras similares de segregación y compraventa a otras personas que habían adquirido propiedades en dicha urbanización. A la Sra. Pacheco Martínez no le entregó copia de su escritura.

Por otra parte, el Comisionado determinó que, para la fecha del otorgamiento de la escritura de compraventa en controversia, el Lcdo. Moreira Avillán tenía conocimiento de que en el Registro de la Propiedad aparecía un gravamen consistente en una hipoteca por la cantidad de $1,381,173.00 a favor de Puerto Rico Housing Corporation, el cual no había sido cancelado. En la escritura, el Lcdo. Moreira Avillán hizo constar que la propiedad estaba libre de gravámenes, excepto por ciertas condiciones restrictivas de uso y edificación y por las servidumbres de utilidades públicas que pudiesen surgir del Registro de la Propiedad.

Así también quedó establecido que, a pesar de que la escritura número 73 fue otorgada el 5 de marzo de 1987, no fue presentada en el Registro de la Propiedad hasta el día 29 de enero de 1988. El 30 de junio de 1988, el registrador notificó al Lcdo. Moreira Avillán las faltas que impedían las inscripción de dicha escritura.[5] El 29 de agosto de ese año, el querellado retiró las escrituras del Registro.

---

[5] En los autos, encontramos copia de la notificación del registrador donde se señala que:

El Comisionado determinó, además, que, a raíz de todos estos incidentes, el 4 de octubre de 1990 la Sra. Pachecho Martínez radicó una demanda en el antiguo Tribunal Superior contra L & S Gurabo Corporation; el Banco Nacional, N.A.; R & G Mortgage Corp., el Lcdo. Moreira Avillán, y el Lcdo. Rexach, entre otros.[6]

Así las cosas, en 1991 la Sra. Pacheco Martínez solicitó del Lcdo. Moreira Avillán copia de la escritura pública número 73 y éste le entregó una que contenía solamente su rúbrica y signo en el primer folio. Posteriormente, a través de la Oficina de Inspección de Notarías, la Sra. Pacheco Martínez consiguió una segunda copia que contenía en la primera página las iniciales

---

"para poder inscribir cada una de las escrituras de segregación y compraventa falta un comprobante por la suma de $5,368.00 para completar los derechos de inscripción. Obsérvese que la finca de la cual se segrega cada solar tiene una hipoteca por $1,381,173.00 a favor de Puerto Rico Housing Bank and Finance Agency, o a su orden, la cual no ha sido cancelada en el Registro. Según el documento presentado no se libera de dicha hipoteca los solares que se segregan y venden.

A las escrituras de Hipoteca les falta inscripción previa y hasta tanto se subsane dicha falta los documentos no podrán calificarse debidamente."

[6] Dicho pleito terminó mediante una transacción entre las partes. El 17 de septiembre de 1996, la Sra. Pacheco Martínez radicó una moción informativa ante este Tribunal en donde nos indicó que desistió con perjuicio del caso en el tribunal de instancia y que no tenía ningún interés en que se continuaran los procedimientos disciplinarios en contra del Lcdo. Moreira Avillán. En cumplimiento de una orden que emitiéramos para que se expresara con respecto a lo anterior, el Procurador General nos solicitó que se prosiguiera con los procedimientos.

S.P.M., las cuales Pacheco Martínez niega haber escrito. Además, la quejosa se percató de que el título de la escritura se había cambiado porque se había omitido la palabra "liberación".

Resulta importante señalar que el Sr. Maldonado Rivera, perito examinador de documentos dudosos del Instituto de Ciencias Forenses, rindió dos informes en el presente caso. Para preparar el primer Informe, fechado 6 de abril de 1994, el Sr. Maldonado Rivera examinó la escritura número 73 directamente del protocolo del Lcdo. Moreira Avillán correspondiente al año de su otorgamiento. Además, su examen pericial incluyó la toma de muestras de escritura tanto de la quejosa como del querellado. El resultado de su examen es que no se puede llegar a ninguna conclusión definitiva. De acuerdo con la opinión pericial de Maldonado Rivera, es probable que el escritor de las iniciales S.P.M. que aparecen en las muestras de escritura producidas por la querellante no sea el escritor de las iniciales S.P.M. que se encuentran en la primera página de la escritura número 73. El perito expresó, además, que es probable que el autor de las iniciales S.P.M., que aparecen en las muestras de escritura provistas por el querellado, no sea el escritor de las iniciales S.P.M. que aparecen en la primera página de la escritura número 73.

---

Mediante resolución del 6 de diciembre de 1996, acogimos la solicitud del Procurador General.

El 20 de octubre de 1994, el Sr. Maldonado Rivera rindió una Informe Suplementario al antes aludido, esta vez para examinar las iniciales de la escrituras número 74 y 75 que, como mencionáramos, también se otorgaron el 5 de marzo de 1987. El resultado de este informe es que tampoco se puede llegar a una conclusión definitiva. Sin embargo, el perito concluyó que existe una alta probabilidad de que el escritor de las iniciales S.P.M. que se encuentran en las escrituras número 74 y 75 no sea el autor de las iniciales S.P.M. que aparecen en la primera página de la escritura número 73.  Añade el perito que razones técnicas no permiten eliminar a este escritor, entiéndase, a la querellante.

Por último, en su Informe el Comisionado consignó que el querellado admitió, durante su declaración en la vista, que presentó la escritura número 73 teniendo conocimiento de que ésta no tendría acceso registral para inscripción porque no se había cancelado en el Registro de la Propiedad el mencionado pagaré hipotecario a favor de Puerto Rico Housing Corporation.[7]

---

[7]     El 26 de agosto de 1988, se otorgó la escritura número 2 ante el Lcdo. Rexach, sobre liberación de hipoteca, mediante la cual se liberaba del gravamen de más de un millón de dólares a la propiedad de la cual se segregó el solar adquirido por la Sra. Pacheco Martínez. Posteriormente, ante el mismo notario, se otorgó la escritura número 3 sobre aclaración de la referida escritura número 2 para decir que la liberación había sido gratuita.  Una vez inscritos estos instrumentos públicos, la escritura número 73 logró acceso al Registro de la Propiedad el 12 de agosto de 1991.

II

De entrada, enfatizamos que este Tribunal, no está obligado a acoger el informe rendido por un Comisionado Especial; "esto es, podemos adoptar el mismo, modificarlo e, inclusive, rechazarlo". In re López de Victoria Báez, Opinión y Sentencia de 6 de abril de 1994; In re Soto López, Opinión y Sentencia de 5 de abril de 1994; Vélez Ruiz v. E.L.A., 111 D.P.R. 752, 757-758 (1981).

Ello no obstante, hemos sostenido que en ausencia de una demostración de parcialidad, prejuicio o error manifiesto de parte del Comisionado Especial al apreciar la prueba, no alteraremos las determinaciones de hecho que éste realice. In re Soto López, ante; In re Rivera Arvelo, Opinión Per Curiam y Sentencia de 4 de marzo de 1993; In re Colton Fontán, 128 D.P.R. 1, 111 (1991).

Con esto en mente, procedemos a evaluar propiamente los cargos contra el Lcdo. Moreira Avillán.

En la querella presentada por el Procurador General se le imputa al Lcdo. Moreira Avillán no haber recogido las iniciales de los otorgantes de la primera página de la escritura número 73 en el mismo día natural de su otorgamiento. Así también se acusa al querellado de haber participado en la falsificación de las iniciales de la Sra. Pacheco Martínez ubicadas a el primer folio del mencionado instrumento público. En su defensa, el notario querellado arguye que las partes escribieron sus iniciales el mismo día del otorgamiento. Según alega, del Bufete Rexach y Picó le

enviaron varias copias extras de la primera página de la escritura por mensajero ese mismo día y fue así como las partes pudieron firmar la mencionada página.

Sabido es que para que una escritura pública sea válida debe tener al final la firma de los comparecientes y al margen de cada uno de los folios sus iniciales.[8] Hemos expresado que la firma de los otorgantes constituye un requisito esencial de un instrumento público. Sucn. Santos Osorio v. Registrador, 108 D.P.R. 831, 837 1979. Así también las iniciales, como parte integrante de la firma, son necesarias para la validez de una escritura. La omisión de tomar la firma e iniciales, además de ser una falta notarial grave y una violación a la fe pública de que están investidos los notarios, es causa de nulidad del instrumento público. In re Colón, Opinión y Sentencia 30 de junio de 1992; Sucn. Santos Osorio v. Registrador, ante, 837; In re Platón, 113 D.P.R. 273, 274 (1982).[9]

El notario tiene el deber de tomar la firma e iniciales de los comparecientes dentro del mismo día natural del

---

[8] La Ley Notarial vigente al momento de otorgarse la escritura en controversia establecía que:

"Serán nulos los instrumentos públicos:
1. ...
3. En que no aparezcan las firmas de las partes, cuando deben hacerlo, la firma del notario, y, en los casos previstos por las secciones 14, 16 y 27, las firmas de los testigos. ..." Sección 20 de la Ley Notarial, 4 L.P.R.A. sec. 1020 (Énfasis suplido.)

[9] Véase, S. Torres Peralta, Derecho Notarial Puertorriqueño, San Juan, P.R., Publicaciones STP, Inc., 1995, págs. 13.11-13.12.

otorgamiento. De este modo, las partes podrán prestar su consentimiento en momentos o lugares distintos, siempre y cuando todos los comparecientes firmen y estampen sus iniciales en la escritura antes de las doce (12) de la medianoche del día en que se autorizó el instrumento público. Ahora bien, cuando el otorgamiento requiera la presencia de un testigo instrumental debe haber unidad en el acto del otorgamiento y todos los comparecientes deben firmar coetáneamente.[10]

A tales efectos, la Ley Notarial de 1956[11] disponía que:

> "Toda escritura, salvo lo que dispone la Sección 27 de esta Ley en casos especiales, podrá ser autorizada por el notario, sin la presencia de testigos; y no será necesario que los que en ella intervengan la firmen en el mismo momento. Por el contrario el notario podrá recibir personalmente sus firmas en cualquier tiempo, siempre que sea dentro del mismo día natural del de su otorgamiento;... ." (Enfasis suplido.)[12]

En el caso de autos, el Comisionado no hizo ninguna determinación concreta con relación a la ausencia de iniciales en la escritura número 73. Solamente se limitó a señalar que la Sra. Pacheco Martínez testificó que el notario querellado nunca le avisó para que compareciera ante él a escribir sus iniciales en la primera página. Por su parte, el

---

[10]     Sección 13 de la Ley Notarial, 4 L.P.R.A. sec. 1013.

[11]     Ley Número 99 de 27 de junio de 1956, 4 L.P.R.A. sec. 1001 et seq.

[12]     Sección 13 de la Ley Notarial, 4 L.P.R.A. sec. 1013.

A iguales efectos, véase, el Artículo 28 de la Ley Notarial vigente, 4 L.P.R.A. sec. 2046.

querellado se sostuvo firme en su posición de que los comparecientes, incluyendo a la quejosa, estamparon sus iniciales en todos los folios del instrumento público dentro del día de su otorgamiento. En ese sentido, únicamente contamos con las versiones encontradas de cada una de las partes.

En cuanto a la alegación de falsificación, el Comisionado Especial tampoco hizo una determinación específica referente a si, a base del testimonio del perito examinador de documentos dudosos, las iniciales en el primer folio de la escritura número 73 fueron falsificadas. En efecto, nunca concluye si este hecho quedó establecido. Más bien, el Comisionado parcamente resumió el informe del perito.

Dada las circunstancias particulares de este caso, resolvemos concederle mayor peso y credibilidad a la versión que de los hechos proveyera el notario querellado. Esto así puesto que el informe del perito lejos de probar que las iniciales fueron falsificadas, exculpa al notario querellado. Resulta ser un dato indiscutible que el perito no pudo concluir, a ciencia cierta y definitivamente, si las iniciales de la querellante eran o no las que aparecían en la primera página de la escritura número 73. El perito, a pesar de haber afirmado que existía una alta probabilidad de que las referidas iniciales no fueran las de la Sra. Pacheco Martínez, nunca descartó que la propia querellante fuera la que estampó sus iniciales. Imputar a una persona

haber falsificado una firma en un documento es una acusación seria que debe ser establecida con prueba robusta y contundente. Avalados por una ausencia patente de prueba a tales efectos, y teniendo en mente el más profundo sentido de justicia, no nos queda otra opción que resolver que el Procurador General no logró probar estos cargos.

Por otro lado, y como parte del segundo cargo, el Procurador General alegó que el Lcdo. Moreira Avillán cambió el título de la escritura número 73 para omitir la palabra "liberación" sin informárselo a los comparecientes. Ante nos, el notario querellado argumenta que eliminó del cuerpo de la escritura toda referencia al negocio jurídico de liberación de una hipoteca que gravaba la propiedad comprada por considerar que lo procedente era la cancelación de tal gravamen. Por tal razón, suprimió del título la palabra liberación. Además, alegó que informó de este hecho a los comparecientes.

Considerando que este Tribunal ha sostenido que el título de un instrumento público no es lo material, sino su contenido. <u>Atocha Thom McAn</u> v. <u>Registrador</u>, 123 D.P.R. 571, 583 (1989), y que, una vez más, no existe evidencia, más allá de las versiones contrarias de cada una de las partes, para establecer que el Lcdo. Moreira Avillán omitió informarles este hecho a los comparecientes, concluimos que el cargo no fue cometido.

Lo expuesto dispone de los primeros dos cargos imputados por el Procurador. Réstanos examinar los últimos dos cargos imputados.

III

Arguye, además, el Procurador General que el Lcdo. Moreira Avillán no hizo constar en la escritura número 73 la existencia de todas las cargas que gravaban la propiedad objeto del negocio jurídico. Así también alega que el Lcdo. Moreira Avillán tardó cuatro años en conseguir que las escrituras públicas número 73, 74 y 75 lograran acceso al Registro de la Propiedad, habiéndose comprometido a inscribirlas. <u>Tiene razón</u>.

En <u>Goenaga</u> v. <u>O´Neill de Milán</u>. 85 D.P.R. 170, 194 (1962), expresamos que el notario que autoriza una escritura no puede ignorar el estado registral de la propiedad sobre la cual las partes otorgan la escritura a la fecha del otorgamiento. En <u>Chévere</u> v. <u>Cátala</u>, 115 D.P.R. 432, 443-444 (1984), reconocimos que:

> "<u>[La] investigación de los antecedentes, al igual que la determinación de cargas y gravámenes a hacerse en la escritura, resultan de incuestionable trascendencia</u>, para 'efectos civiles (por ejemplo, saneamiento por gravámenes de la finca vendida sin mencionarlo la escritura)'; para 'efectos registrales, para la confrontación con las que figuren en el Registro, si bien la falta de expresión de cargas en las escrituras no es defecto que impida la inscripción del título'; y a 'efectos notariales, porque la determinación de las cargas es necesaria para la posterior concreción en la parte dispositiva de las responsabilidades que

contrae cada parte contratante.'; a 'efectos fiscales...'" (Enfasis suplido.)

Por tal razón, hemos resuelto que un abogado-notario que autoriza una escritura de compraventa y hace constar en dicha escritura que la propiedad estaba libre de cargas y gravámenes, hecho contrario a la realidad registral, viola la fe pública notarial y el Canon 35 de Etica Profesional, 4 L.P.R.A. Ap. IX. In re Ramos Méndez y Cabiya Ortiz, 120 D.P.R. 796, 797 (1988).

Ahora bien, en In re Ramos Méndez y Cabiya Ortiz, ante, ante, expresamos que procedía sancionar al abogado-notario que incurriera en tal conducta mediante una amonestación si se suscitaban las siguientes circunstancias atenuantes: (1) que los hechos demuestren que no hubo mala fe ni intención de engañar de parte del querellado; (2) que una vez se percató del error y de las consecuencias adversas para el querellante, el notario desplegó gran diligencia en lograr corregir y subsanar el mismo, y (3) que el querellante exprese que no tiene interés en ulteriores procedimientos en relación con el notario querellado.

En el presente caso, el Lcdo. Moreira Avillán manifestó que, de forma verbal, le había indicado a los comparecientes que L & S Gurabo Corp. había saldado el préstamo de construcción con el acreedor hipotecario, que en aquel momento era el Banco de la Vivienda. Debe señalarse, que el referido Banco procedió a endosar el pagaré hipotecario representativo del préstamo de

construcción a favor de L & S Gurabo Corp. para la cancelación y que, en lugar de proceder a la cancelación, L & S Gurabo Corp. negoció dicho pagaré hipotecario y lo entregó en prenda al Banco Nacional.

De todos estos acontecimientos, alega el notario querellado, se enteró al intentar efectuar la liberación de una de las unidades vendidas y de inmediato comenzó las gestiones para proceder a liberar las casas vendidas. Al parecer, L & S Gurabo Corp. había negociado el pagaré al Banco Nacional con el compromiso de que éste liberaría gratuitamente las restantes unidades de viviendas del pagaré, ya que el acuerdo era que su garantía hipotecaria estaría limitada al remanente de la finca donde se había desarrollado la urbanización y no recibiría suma alguna del producto de la venta de las unidades de vivienda.

Esas gestiones con el Banco Nacional culminaron con el otorgamiento de la escritura número 2 el 26 de agosto de 1988 ante el Lcdo. Rexach sobre liberación de hipoteca. Sin embargo, tal escritura no pudo ser inscrita porque se omitió expresar que la liberación era gratuita. Luego de varias divergencias con los directores del Banco Nacional, ajenas y fuera del control del Lcdo. Moreira Avillán, el Lcdo. Rexach autorizó, el 20 de febrero de 1991, la escritura número 3 sobre aclaración. Fue entonces cuando la escritura de la querellante logró acceso al Registro de la Propiedad.

Ello no obstante, al otorgar la escritura número 73, el Lcdo. Moreira Avillán lo hizo dando fe de que no había más

cargas que las que se hacían constar en los incisos 2, 3, y 4 de la propia escritura, sobre restricciones de uso y edificación y servidumbres de utilidades públicas. A tenor con todo lo antes expuesto, no cabe duda que al no hacer constar el gravamen hipotecario, el Lcdo. Moreira Avillán no actuó con el debido cuidado al ejercer su función notarial. Mas, los hechos también demuestran que no hubo mala fe ni intención de engañar de parte del notario querellado y que cuando éste se percató de que el pagaré hipotecario había sido negociado nuevamente, desplegó gran diligencia en lograr liberar las propiedades del gravamen. Así también milita a favor del querellado el hecho de que la Sra. Pacheco Martínez compareció ante nos expresando que no tenía interés en proseguir los procedimientos en relación con el querellado. Al tomar en consideración todas estas circunstancias atenuantes y su buen historial previo, resolvemos <u>únicamente</u> amonestar al abogado-notario Moreira Avillán, apercibiéndolo de que en el futuro deberá observar, con mayor rigor, los preceptos notariales.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LOPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:

Sixto Moreira Avillán                    CP-96-1        CONDUCTA
                                                        PROFESIONAL


SENTENCIA


San Juan, Puerto Rico a 13 de noviembre de 1998


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, este Tribunal decide <u>únicamente</u> amonestar al abogado-notario Moreira Avillán, apercibiéndolo de que en el futuro deberá observar, con mayor rigor, los preceptos notariales.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señor Negrón García y señor Fuster Berlingeri no intervinieron.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo