EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Luis G. Saavedra Serrano | 2005 TSPR 145 <br><br> 165 DPR _____ |

Número del Caso: AD-2003-3

Fecha: 19 de octubre de 2005

Oficina de Administración de los Tribunales:

Lcda. María C. Marina Durán

Abogado de la Parte Querellada:

Lcdo. Felipe Benicio Sánchez

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Luis G. Saavedra Serrano                    AD-2003-3

PER CURIAM

San Juan, Puerto Rico, a 19 de octubre de 2005

El licenciado Luis Saavedra Serrano fue admitido al ejercicio de la abogacía el 1 de noviembre de 1977. El 24 de febrero de 1978 fue nombrado Juez Municipal del Tribunal de Primera Instancia. Posteriormente, el 24 de julio de 1992, fue nombrado Juez Superior. Desde entonces, ejerció su cargo en varias de las regiones judiciales del País hasta el 21 de octubre de 2003 cuando expiró el término para el cual había sido nombrado.

Rafael González Salas presentó una queja juramentada en la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales

contra Saavedra Serrano quien, en ese momento, fungía como Juez Superior del Centro Judicial de Carolina. En la referida queja se alegó, que el 9 de septiembre de 2002, durante una vista de determinación de causa probable por un delito menos grave[1], el entonces Juez Saavedra Serrano lo trató en forma despectiva y humillante, haciendo comentarios que no tenían que ver con el proceso, los cuales constituyeron una falta de respeto hacia su persona. Alegó, además, que el Juez Saavedra Serrano le impuso un desacato sumario de noventa (90) días de cárcel, el cual consideró injusto y desproporcionado.

La Oficina de Administración de los Tribunales evaluó la grabación de los procedimientos y la evidencia contenida en declaraciones juradas y otros documentos, luego de lo cual rindió un informe de investigación. Determinó la referida Oficina que, de las declaraciones juradas tomadas y de la evidencia documental obtenida, existía evidencia suficiente para establecer que el Juez Saavedra Serrano había violado los Cánones I, XI, XVII, XXVI de Ética Judicial y los Cánones 9 y 15 de Ética Profesional. Sostuvo la OAT, además, que a base de la investigación realizada, la conducta observada por Saavedra Serrano, tanto en lo personal, como en lo profesional, ameritaba su destitución como juez. El informe fue remitido con toda la prueba documental a la Comisión de Disciplina y de Separación del

---

[1] Pueblo de Puerto Rico v. Rafael González Salas, CR2002-969 en el Tribunal de Primera Instancia, Sala Superior de Carolina.

Servicio por Razón de Salud de los Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones, en adelante, la Comisión.

Luego de recibir el referido informe, la Comisión fue informada que el nombramiento del Juez Saavedra Serrano como Juez Superior había expirado el 21 de octubre de 2003, por lo cual solicitó de la Oficina de Administración de los Tribunales que le informara su posición respecto a si los hechos imputados en el informe constituían una posible violación a los Cánones 9, 15 y 38 de los de Ética Profesional. La Oficina de Administración de Tribunales así lo hizo y el 20 de febrero de 2004 presentó un informe de investigación enmendado ante la Comisión, en el cual indicó que entendía que los hechos alegados en la queja efectivamente constituían violación a los Cánones 9, 15 y 38 de los de Ética Profesional, 4 L.P.R.A. Ap. IX.

En virtud del referido informe, la Comisión designó, para la correspondiente determinación de causa, al Comisionado Lcdo. Ramón García Santiago. Éste, luego de la evaluación del mismo, determinó causa probable para continuar con el procedimiento disciplinario y para que se procediese al trámite de radicación de querella contra el Lcdo. Luis G. Saavedra Serrano por violación al Código de Ética Profesional.

En vista de ello, el 3 de mayo de 2004, la Oficina de Administración de Tribunales presentó una querella ante la Comisión en la cual se le imputan al licenciado Saavedra

Serrano tres cargos <u>por violaciones a los Cánones 9, 15 y 38</u>

<u>de los de Ética Profesional</u>, ante.[2]

En su contestación, el licenciado Saavedra Serrano

alegó, en síntesis, que los hechos sobre los que versa la

---

[2] Los cargos imputados, en síntesis y en lo pertinente, son los siguientes:

Primer Cargo:
   La conducta del licenciado Saavedra fue contraria a la exigida por el Canon 9 de los de Ética Profesional, en términos de la falta de respeto y del orden que debe prevalecer en los tribunales e impidió la buena marcha de los procedimientos en el caso que se ventilaba ante su presencia. La actitud del licenciado Saavedra abusó de su prerrogativa y su desempeño general durante la celebración de esta vista, no fue propio y violó la actitud cortés y respetuosa que exige este Canon.

Segundo Cargo:
   El licenciado Saavedra no honró el respeto y la consideración que exige el Canon 15 de los de Ética Profesional. Se advierte al escuchar la vista e incluso al leer la transcripción de la misma cierta animosidad y hasta perjuicio en el trato del licenciado Saavedra hacia el querellante. Este trato provocó que el querellante se sintiera hostigado al punto que presentó la queja ante la Oficina de Asuntos Legales. Además, el tono de voz del licenciado Saavedra contiene cierto cinismo, fue exagerado en su insistencia del modo que el querellante debía referirse a él. Estos hechos toman relevancia ante la realidad de que el querellante se encontraba en desventaja, no sólo por la falta de representación profesional, sino por su condición emocional.

Tercer Cargo:
   Los hechos constitutivos de esta querella demuestran que el licenciado Saavedra se apartó del contenido del Canon 38 de los de Ética Profesional al dejar de exaltar el honor y la dignidad que reviste la profesión legal. El resultado del incidente que provoca esta querella se alejan de la "cabal aportación hacia la consecución de una mejor administración de la justicia". Al igual que el cargo anterior, el licenciado Saavedra se apartó de una conducta digna y honorable que exige la profesión legal.

Esta actuación violó el Canon 38 de Ética Profesional.

querella no son constitutivos de violación a los Cánones de Ética Profesional imputados y que, ante la conducta agresiva y desafiante del acusado, en la vista del 9 de septiembre de 2002, se vio en la obligación de hacer valer la dignidad del Tribunal y el respeto que deben tener las personas cuando asisten al mismo. Sostuvo, además, que actuó de manera caballerosa, justa, firme y sin temor, al no permitir en corte abierta que un desajustado mental lo provocara a él, como Juez, a la parte perjudicada y a los testigos. Sobre el desacato impuesto al querellante, alegó que este respondía a la gravedad de la conducta desafiante y amenazante del acusado querellante.

La Comisión celebró vistas evidenciarias los días 26 de enero y 23 de febrero de 2005, en las cuales tanto la Oficina de Administración de los Tribunales como el abogado querellado ofrecieron prueba testifical y documental.[3] Tras la celebración de la primera vista evidenciaria, la Comisión estimó pertinente citar al Dr. Rafael Cabrera Aguilar, Psiquiatra Forense del Estado, quien había tenido la oportunidad de evaluar la condición psiquiátrica del querellante González Salas. En su testimonio, el Dr. Cabrera

---

[3] Entre la prueba documental ofrecida y admitida se encuentran copia de la transcripción de la vista celebrada el 9 de septiembre de 2002 y minuta del juicio en su fondo celebrado ese mismo día ante el Juez Saavedra en el caso Pueblo de Puerto Rico v. Rafael González Salas, CR2002-969 en el Tribunal de Primera Instancia, Sala Superior de Carolina. También se admitió en evidencia la minuta de vista de procesabilidad celebrada el 25 de septiembre de 2002 ante el Juez Dimas G. Padilla Bruno, y las evaluaciones siquiátricas de González Salas realizadas por el Dr. Rafael Cabrera Aguilar.

Aguilar indicó que González Salas presentaba un desorden paranoide y que a su juicio, este no se encontraba apto para testificar ante la Comisión.

Luego de celebradas las vistas, la Comisión emitió su informe con su relación del caso, determinaciones de hecho y recomendación. [4] Habiendo quedado sometido el caso ante nuestra consideración y contando con el informe de la Comisión y el alegato del abogado querellado, procedemos a resolver.

I

Los hechos que dieron lugar a la presentación de la querella contra el licenciado Saavedra Serrano, ocurrieron el 9 de septiembre de 2002 mientras este presidía el juicio en su fondo en el caso Pueblo de Puerto Rico v. Rafael González Salas, CR2002-969, en el Tribunal de Primera Instancia, Sala Superior de Carolina , en que se ventilaba una infracción al Artículo 53 del Código Penal sobre amenaza, 33 L.P.R.A sec. 4194.

De un análisis, tanto de la transcripción de la vista, como del Informe de la Comisión, se desprende que, llamado el caso, el entonces Juez Saavedra Serrano preguntó si el nombre del acusado era Don Rafael González Salas, a lo que

---

[4] En dicho informe, la Comisión determinó, en síntesis, que la conducta en que incurrió Saavedra Serrano, actuando como Juez, era violatoria de los Cánones 1, 17 y 18 de los de Ética Judicial; determinó, sin embargo, que la misma no violaba los Cánones 9, 15 y 38 de los de Ética Profesional, razón por la cual recomendó eximir, como abogado, a Saavedra Serrano.

este contestó "sí señor, eso es así". Inmediatamente, el juez replicó: "No, a mí no me interesa que eso sea así o no, la pregunta es si es usted", luego de lo cual, el Juez le advirtió que siempre se dirigiera a él como "sí señor o no señor".

El querellado procedió a preguntarle a González Salas si él tenía representación legal. Éste último le explicó al querellado que no contaba con suficientes recursos económicos para sufragar dicha representación, por lo cual había realizado varias gestiones para obtener representación legal, pero que los trámites habían resultado infructuosos ya que en Asistencia Legal no atendían casos menos graves y que en la Clínica Legal de la Universidad de Puerto Rico sólo atendían casos de San Juan, no de Carolina. A esto, el Juez Saavedra contestó: "acaba de descubrir lo que el Tribunal sabe hace mucho tiempo".

Acto seguido, el querellado le indicó a González Salas que tenía que buscar un abogado y traerlo a sala dentro de diez minutos, a lo que el acusado le informó que no podía pagarlo. Entonces, el Juez le respondió:

> "Lo lamento, lo va a tener que hacer, señor, le voy a explicar por qué. Simplemente y llanamente yo no tengo elementos ninguno para juzgar si usted es indigente o no, y porque si usted se para ahí no va a conseguir que yo le asigne un abogado, de esa forma no. ¿Me entendió, señor?"[5]

---

[5] Vale la pena destacar que más adelante el Juez preguntó a González Salas a qué se dedicaba, a lo que éste contestó que era vendedor de perfumes, sin lugar fijo de trabajo, y que en ese momento, no estaba realizando ventas.

González Salas respondió con un simple "sí", a lo que el Juez le contestó con un "sí, ¿qué?". El querellante contestó que había entendido. Seguido, el Juez Saavedra Serrano volvió a exigir que el acusado se dirigiera a él como "señor".

Luego, el querellado procedió a dirigirse al acusado de esta forma:

> "Mire, Don Rafael, perdóneme, usted tiene un delito aquí de amenaza y me está enseñando quizás lo que no debería. Yo le estoy advirtiendo, y se lo estoy diciendo muy claramente, mi deseo es ser justo con usted, ser correcto con usted, pero no son sus normas, son las mías. Segundo, aquí puede entrar por una amenaza y salir preso por un desacato. Le voy a rogar, tenga cuidado como me habla, porque yo meto preso a la menor provocación, puede verificarlo por ahí, no es mi deseo, yo no disfruto, pero en mi sala se va a comportar con la decencia que corresponde a las buenas o a las malas".

Expresó, luego, el Juez Saavedra Serrano, que si el acusado seguía insistiendo en tratarlo de otra forma que no fuese de usted, él iba a entender que se estaba retando su autoridad y específicamente le dijo: "y va a ir preso, yo se lo puedo garantizar, Don Rafael, se lo puedo garantizar".

El Juez procedió a recomendarle, nuevamente, al acusado que siguiera sus instrucciones y consiguiera un abogado que velara por sus intereses y derechos. Luego de esto expresó:

> "Pues bien. Don Rafael, tiene 10 minutos, consiga un abogado y favor, Rafael, verifique en qué sala está, se lo voy a rogar, porque es la última paciencia que voy a tener con usted, la última. Ya yo le expliqué lo que hay, si usted no lo quiere entender, por favor, lo va a lamentar, se lo digo de corazón. ¿Entendió señor?"

Luego de estos incidentes, el Juez Saavedra Serrano asignó el caso para un turno posterior, mientras González Salas conseguía un abogado que lo representase. Cuando el caso fue llamado en segunda ocasión, el acusado le informó al Juez Saavedra Serrano que había hablado con un abogado para que lo representase, pero que en ese momento no se encontraba en sala.

El Juez Saavedra Serrano respondió lo siguiente:

"Pues tiene hasta las 2:00, pero Don Rafael, va a tener un abogado en el día de hoy, téngalo por seguro, yo le di una orden, consígalo… Pero aquí en esta sala usted no puede seguir hablando conmigo sin abogado, por qué razón, porque señor aquí se graba, y si usted dice lo que no debe, hace lo que no puede, solito se mete preso, para eso están los abogados y ciertamente usted tiene que tener uno".¿Me ha entendido, señor?

El acusado contestó con un "sí, señor" y el Juez prosiguió, advirtiendo que:

"O sea, aquí, Don Rafael, quizás usted no se dé cuenta, están pasando casos de gente acusada de asesinato. O sea, yo veo casos donde la gente se coge 200 años de cárcel, 300. Usted tiene un menos grave, no trate de buscarse un desacato conmigo porque es innecesario, porque yo castigo. Y también soy muy dado a conceder remedios, como la absolución que usted acaba de ver. Pero no se me cuadre porque ninguno se ha levantado, hágame ese favor, porque yo me conozco, y estoy hablando bajito, cualquier abogado sabe lo que eso significa, usted viene sumiso y demuestra deferencia hacia mí, está bien. Pero si cree que va a montar un "show" de la calle aquí conmigo, señor, se equivocó. Se lo digo. Señor, yo llevo casi 25 años, no lo haga. Venga con sumisión, se le garantizan sus derechos, su debido proceso, se le sirve con todo gusto, pero no me traiga su actitud de la calle. Hágase un favor y hágamelo a mí".

En ese momento, el Lcdo. Samuel Nieves Rodríguez intervino y ofreció representar al acusado. El Juez inquirió

de éste si estaba dispuesto a representar a González Salas, a lo que el Lcdo. Nieves Rodríguez indicó que sí lo haría. Ello no obstante, el Juez especificó que <u>no se lo estaba asignando de oficio</u>, a lo que el licenciado Nieves Rodríguez contestó que no cobraría honorarios por dicha representación. Acto seguido, el Juez le indicó al abogado que:

> "…hable con él porque <u>yo noto que Don Rafael está desorientado, me parece que él no sabe dónde está</u> y digo esto, <u>con quién está bregando.</u>"

El Juez procedió a preguntar al acusado si aceptaba que el licenciado Nieves Rodríguez asumiese su representación legal. González Salas contestó "sí, señor". A continuación, las expresiones emitidas por el Juez, inmediatamente después:

> "Mire, don Rafael, usted sabe por qué aquí lo tratamos así, porque a pesar de que <u>yo tengo su libertad en mis manos, porque ese es mi poder y mi autoridad</u>, yo trato a todo el mundo, damas, señor, usted, señora, Don, y usted no puede venir a tratar al tribunal de otra forma porque el tribunal lo está tratando así".

Surge de la transcripción de la vista y del propio informe de la Comisión que es, <u>en este momento</u>, o sea, luego de este comentario del Juez Saavedra Serrano, en que el acusado perdió, totalmente, el control sobre sus expresiones y comportamiento, alterándose en sala y expresando que se estaba cometiendo un gran abuso e injusticia. Algunas de estas expresiones fueron:

> "Okay, espérese, espérese un momento, un momento, no, no, ya me cansé, ya me cansé de esto, no, no, no."

"Claro abusen, abusen, claro, abusen. Pero ya no me voy a someter y a humillar a más abusadores como ustedes…"

"Usted está cometiendo un gran abuso, pero hágalo, pero no me voy a someter más ni a usted ni a ningún juez que venga a humillarme. Puede arrestarme o puede hacer lo que sea…"

"No, no, no, no señor, ni a usted ni a ningún juez me le voy a humillar jamás en la vida, ya me han "jodío" demasiao´ veces en la vida y usted va a ser el último. No se preocupe, porque yo estoy aquí, me las va a pagar toditas juntas…"

"Repito, repito, a mí me chocaron el carro, se negaron a pagarme, fui y le caí encima al individuo y lo amenacé, eso es verdad, eso es absolutamente verdad. Entonces el individuo me ha metido aquí, claro, entonces la corte no lo obliga a que me pague los daños de mi carro pero me mete preso. Mire, puede enviarme, puede enviarme años de cárcel, pero jamás me voy a humillar, jamás en la vida, usted fue el último".

En varias ocasiones, tanto el alguacil de sala, como el licenciado Nieves Rodríguez le pidieron a González Salas que se callara. Sin embargo, este continuó alterado y manifestó que había agredido y amenazado al perjudicado porque éste no le había pagado los daños sufridos por su automóvil durante un accidente; además, continuó haciendo expresiones amenazantes tanto al Juez como al perjudicado.

A la luz de dichos incidentes, el Juez Saavedra Serrano le impuso un desacato al acusado y ordenó que éste fuese ingresado en la cárcel por un término de noventa días.

II

En su informe, la Comisión expresó que el querellado había desplegado <u>excesiva severidad e impaciencia</u> durante la

vista antes reseñada. Concluyó, que conducta de la índole observada por el Juez Saavedra Serrano afectaba adversamente el sistema judicial, creaba una imagen negativa de los tribunales y que era impermisible que un juez observara este tipo de comportamiento, aun cuando las expresiones verbales o corporales de un individuo se encontrasen impregnadas de reto o amenaza. Por ello, la Comisión determinó que la conducta del entonces Juez Saavedra Serrano constituyó una violación a los Cánones I, XVII, y XXVI de Ética Judicial. Sin embargo, la Comisión expresó que conforme lo establecido en la Regla 37 de las Reglas de Disciplina Judicial[6] --y ya que el licenciado Saavedra Serrano había cesado en sus funciones como juez por haber expirado el término de su cargo-- sólo le correspondía evaluar si tal conducta ameritaba la imposición de medidas disciplinarias por violación a los Cánones 9, 15, y 38 del Código de Ética Profesional, ante, según imputados en la querella presentada contra éste.

Luego de un examen de la conducta imputada, la Comisión determinó que no hubo violación a los referidos Cánones de Ética Profesional. A estos efectos, razonó que los Cánones 9 y 15, ante, habían sido diseñados con el fin de regir la conducta de los miembros de la profesión legal en los

---

[6] La referida regla dispone que la presentación por el juez o jueza de la renuncia al cargo o la expiración del término de un nombramiento no impedirá que continúe el procedimiento disciplinario en su contra a los efectos de determinar si la conducta imputada amerita la recomendación de que se impongan medidas disciplinarias contra el querellado como abogado o abogada.

tribunales y, por lo tanto, no eran de aplicación a los jueces. Asimismo, determinó que la conducta del entonces Juez Saavedra Serrano no fue de tal magnitud que constituyera una violación al Canon 38 de los de Ética Profesional, ante. Conforme a ello, la Comisión recomendó a este Tribunal que no se impusieran medidas disciplinarias al querellado por su conducta como abogado.

## III

No tenemos duda de que la prueba presentada hubiera sido suficiente para sostener las violaciones originalmente presentadas en cuanto a los Cánones de Ética Judicial, tal y como se expresa en el informe de la Comisión. [7]

---

[7] Así, el Canon I le impone a los jueces el deber de velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la Judicatura.

Por su parte el Canon XVII dispone que en el curso de los procedimientos el Juez o la Jueza mantendrá su actitud general, sus manifestaciones y el tono de su voz dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesivas. Tampoco hará comentarios ni gestos ajenos al proceso judicial, entendiéndose comprendidos dentro de esta prohibición, aquellos comentarios, expresiones o gestos que envuelvan burla o mofa; ni ridiculizará de modo alguno a los abogados o las abogadas, las partes, los o las testigos, funcionarios o funcionarias del tribunal o a otras personas que a él o ella acudan.

Finalmente, el Canon XXVI dispone que los anteriores cánones de ética judicial son normas mínimas de comportamiento que todo Juez y toda Jueza debe observar fielmente, tanto en su letra como en su espíritu, por ser consustanciales con el cargo judicial. Estos cánones no excluyen otras normas de conducta que también obligan al Juez y a la Jueza, que están establecidas por ley o que son inherentes al honor tradicional de la judicatura.

Verdaderamente, la conducta del licenciado Saavedra Serrano, mientras fungió como juez en el caso contra el querellante, fue una excesivamente hostil, impaciente, despectiva y hasta abusiva. La misma está reñida con dichos Cánones, los que requieren del juez que actúe con serenidad, imparcialidad, consideración y respeto. In re Scherrer Caillet-Bois, res. el 21 de septiembre de 2004, 2004 T.S.P.R. 151; In re Cruz Aponte, res el 7 de abril de 2003, 2003 T.S.P.R. 51.

Todas las personas involucradas en el proceso judicial --jueces, litigantes, testigos y oficiales del tribunal-- tienen un deber de cortesía con los demás participantes. In re Barreto Ríos,  res. el 28 de junio de 2002, 2002 T.S.P.R. 89. Además, algunas de las expresiones hechas por el entonces Juez Saavedra Serrano, en corte abierta, fueron amenazantes y hechas con el propósito de intimidar al querellante, conducta contraria al propósito del esquema de normas que rigen la conducta de los jueces. Las mismas imponen a los jueces el deber de velar por mantener la fe de la ciudadanía en la justicia y promover la confianza del pueblo en nuestro sistema judicial. In re González Acevedo, res. el 20 de junio de 2005, 2005 T.S.P.R. 87; In re Cruz Aponte, ante.

Sin embargo, el hecho de que el licenciado Saavedra Serrano ya no forma parte de la Judicatura nos impide sancionarlo a la luz de dicho cuerpo de normas. Es por ello que corresponde examinar su conducta a la luz de los Cánones de Ética Profesional.

Si bien coincidimos con la Comisión en cuanto a que las actuaciones del licenciado Saavedra Serrano no constituyeron violaciones a los Cánones 9 y 15 de Ética Profesional, por ser éstos dirigidos exclusivamente a la conducta del abogado litigante en corte ––razón por la cual no aplican a los jueces–– consideramos que su conducta sí infringió el Canon 38 de Ética Profesional. Veamos.

De entrada, es menester señalar, que como norma general, este Tribunal no alterará las determinaciones de hecho de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces, excepto en aquellos casos en que se demuestre parcialidad, prejuicio o error manifiesto. Ello no obstante, este Tribunal no está obligado a aceptar sus recomendaciones. In re Maldonado Torres, 152 D.P.R. 858 (2000); In re Moreira Avillán, 147 D.P.R. 78 (1998); In re Soto López, 135 D.P.R. 642, 646 (1994).

Los miembros de la profesión legal tienen la responsabilidad de velar por que los distintos procesos legales de la sociedad consagren de manera efectiva y adecuada el principio de respeto a la inviolable dignidad del ser humano. Preámbulo a los Cánones de Ética Judicial. "La práctica de la abogacía, distinto quizás a otras profesiones, conlleva una seria y delicada función ciudadana pues la misma representa servicio, ética y ejemplo". In re Santiago Rodríguez, res. el 20 de agosto de 2003, 2003 T.S.P.R. 137, citando a Ramos Acevedo v. Tribunal Superior, 133 D.P.R. 599, 613 (1993).

Este Tribunal ha expresado que, siendo los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen. In re Cintrón Colón, res. el 13 de mayo de 2004, 2004 T.S.P.R. 73; In re Santiago Rodríguez, ante; In re Silvagnoni Collazo, res. el 29 de junio de 2001, 2001 T.S.P.R. 106, 2001 J.T.S. 109; In re Ortiz Brunet, res. el 22 de noviembre de 2000, 2000 T.S.P.R. 170, 2000 J.T.S. 182; In re Coll Pujols, 102 D.P.R. 313, 319 (1974).

En lo pertinente, el Canon 38, ante, le impone al abogado el deber de esforzarse, al máximo de su capacidad en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del sistema judicial, el abogado deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable.

Surge de la prueba presentada, e incontrovertida, que la conducta del querellado no fue una serena, imparcial y respetuosa, tal y como se exige de los jueces y de los abogados, sino todo lo contrario. El licenciado Saavedra Serrano, desde el comienzo de la vista, actuó de forma

hostil y descortés al dirigirse al querellante, y en varias ocasiones hizo alusión a su poder y autoridad para "meter preso" a éste. Además, aun cuando el acusado querellante manifestó --en forma serena y respetuosa-- ser una persona indigente, y que carecía de representación legal, el querellado, de forma severa y abusiva, le advirtió que si no lo hacía "lo iba a lamentar"; le ordenó buscar representación legal, sin hacer uso de su facultad para asignarle un abogado de oficio.[8] Igualmente, el licenciado Saavedra Serrano, aun cuando advirtió alguna condición mental o emocional de González Salas [9], no observó sensibilidad alguna y continuó dirigiéndose a éste de forma recia y despectiva, lo que ocasionó que, finalmente, González Salas reaccionara en la forma en que lo hizo.

Aun cuando el comportamiento del querellante González Salas, durante el transcurso de la vista, pudo haber sido uno negativo, a través de sus gestos y actitudes, resulta necesario enfatizar que entre el comienzo de la vista hasta el momento en que González Salas perdió el control, éste no había hecho expresión verbal alguna que denotase falta de respeto hacia el Juez, ni hacia el procedimiento que se estaba llevando a cabo en su contra. La mayor parte del

---

[8] Vale la pena señalar que cuando el Lcdo. Nieves Rodríguez asumió la representación legal de González Salas, el querellado expresó que no lo estaba asignando de oficio.

[9] Enfatizamos que cuando el Lcdo. Nieves Rodríguez asumió la representación legal de González Salas, el querellado le informó que notaba que éste se encontraba desorientado y que parecía no saber dónde estaba.

tiempo el querellante se limitó a contestar las preguntas del querellado con un "sí, señor".

Resulta evidente que, con su proceder, el licenciado Saavedra Serrano lo que hizo fue intimidar innecesariamente a un ciudadano humilde y afectado emocionalmente, lo cual denigra la profesión legal, promoviendo y ocasionando que este ciudadano reaccionara de la forma en que lo hizo, perdiendo el control sobre su comportamiento.

Somos del criterio que, evidentemente, el licenciado Saavedra Serrano no observó el deber de todo abogado de velar por que se observe el respeto por la dignidad humana. Sus actuaciones también son antagónicas con el principio de servicio que representa el desempeño de la profesión.

En fin, los hechos que dieron lugar a esta querella demuestran que el licenciado Saavedra Serrano violentó el Canon 38, ante, al dejar de exaltar el honor y la dignidad que reviste la profesión legal. Ciertamente, sus actuaciones, como abogado, se alejan de una cabal aportación hacia la consecución de una mejor administración de la justicia.

En vista de que se trata de una primera ofensa, como medida disciplinaria, únicamente consideramos procedente censurar al Lcdo. Luis G. Saavedra Serrano por la conducta incurrida en el presente caso, apercibiéndosele contra futuras infracciones.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Luis G. Saavedra Serrano                    AD-2003-3

SENTENCIA

San Juan, Puerto Rico, a 19 de octubre de 2005

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia censurando al Lcdo. Luis G. Saavedra Serrano por la conducta incurrida en el presente caso, apercibiéndosele contra futuras infracciones de los Cánones de Ética Profesional.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez "disiente por entender que de la conducta observada por el querellado no surge violación alguna a los Cánones de Ética Profesional. El querellado pudo haber sido disciplinado por esa misma conducta como juez bajo los Cánones de Ética Judicial, vigentes para esa fecha. No obstante, no se procedió de esa forma porque en el momento en que la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de los Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones recibió el informe de la Oficina de Administración de los Tribunales, el nombramiento del querellado como Juez Superior había expirado y éste ya no era juez. El principio de apariencia y el deber general de los abogados de esforzarse al máximo en la exaltación del honor y dignidad de su profesión, dispuesto en el Canon 38 de Ética Profesional, 4 L.P.R.A. Ap. IX, tienen que sostenerse, por

imperativo del derecho constitucional a un debido proceso de ley, sobre la impresión que se le da a un observador razonable de la violación efectiva a alguno de los otros Cánones de Ética Profesional, <u>In re Sepúlveda Girón</u>, 155 D.P.R.__ (2001), res. 24 de octubre de 2001, 2001 J.T.S. 156. Ese no es el caso ante nos." La Juez Asociada señora Fiol Matta no intervino.

                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo