Opinión disidente emitida por
la Juez Asociada Señora Ro-dríguez Rodríguez.
“El que ya está listo
siempre con daño el esperar soporta.”
Dante Alighieri,
La Divina Comedia, Infierno, Canto XXVIII
El caso que tenemos ante nuestra consideración re-quiere que nos expresemos en torno a un asunto sobre el cual no nos habíamos pronunciado, a saber: cuándo y bajo qué circunstancias la tardanza de un juez en dictar senten-cia en un caso sometido ante su consideración se configura como una violación a los Cánones de Etica Judicial.
La respuesta que hoy ofrece la mayoría es por demás decepcionante. La determinación que anuncia la mayoría es contraria a las más modernas tendencias que procuran *555 exigir responsabilidad a quienes tienen la delicada enco-mienda de impartir justicia, allí donde estos la han dila-tado injustificadamente. En términos prácticos, esfuma la obligación de todo juez de dar cuenta por sus actos. Limita, injustificadamente las facultades y prerrogativas de la Co-misión de Disciplina Judicial y eviscera de contenido los Cánones de Etica Judicial. Como resultado de lo anterior, se desvaloriza la diligencia y la laboriosidad en el desem-peño judicial. Temo que el dictamen mayoritario lacere la imagen de la Judicatura ante la ciudadanía, con lo que ello conlleva para cualquier sistema judicial.
Porque no comparto la visión de la mayoría, disiento.
I
La naturaleza de esta controversia requiere que repase-mos rigurosamente los hechos que le sirven de trasfondo.
El 22 de septiembre de 1989 el Sr. Elexsy Pagán García sufrió un accidente automovilístico mientras viajaba en su motora, por lo que fue trasladado en ambulancia al Hospital Regional de Carolina y, dos horas más tarde, fue refe-rido a la Sala de Emergencia del Centro Médico. Una vez allí, se decidió trasladarlo al Hospital General San Carlos. Posteriormente, fue trasladado nuevamente al Centro Mé-dico, donde quedó recluido en la Sala de Cuidado Intensivo. El señor Pagán García falleció el 2 de octubre de 1989.
Luego de su deceso, su esposa e hijos, así como varios otros familiares, instaron una demanda en daños y perjui-cios por impericia médica contra, entre otros, el Estado Li-bre Asociado de Puerto Rico, la Universidad de Puerto Rico, la Administración de Servicios Médicos de Puerto Rico y el Hospital San Carlos. La demanda se presentó el 18 de junio de 1990 en el Tribunal de Primera Instancia, Sala Superior de Carolina. María Rodríguez Casillas y *556 otros v. Universidad de Puerto Rico y otros, Civil Núm. FDP-90-0309 (Rodríguez Casillas).
Luego de innumerables incidentes procesales, la vista en su fondo comenzó el 25 de octubre de 1993 y concluyó el 10 de octubre de 1996. La jueza asignada a este caso fue la Hon. Carmen Heydee Pagani Padró.(1) Concluida la vista, la jueza Pagani Padró solicitó a las partes, por separado, que le remitiesen un memorando sobre determinaciones de hechos, para lo cual les concedió hasta enero de 1997. Las partes sometieron sus respectivos memorandos y el último de estos se recibió el 5 de marzo de 1997. El caso quedó sometido en espera de que se dictase sentencia el 6 de marzo de 1997. El tribunal dictó sentencia desestimando la de-manda el 4 de mayo de 2007.
El 12 de marzo de 2008, varios de los demandantes en el caso presentaron una queja contra la jueza Pagani Padró ante la Oficina de Asuntos Legales de la Administración de los Tribunales. En la queja se alegó que la tardanza exce-siva en dictar sentencia fue una actuación abusiva de parte de la jueza, la cual ameritaba sanciones disciplinarias.
Recibida la queja, la Directora Administrativa de los Tribunales ordenó una investigación sobre lo alegado. El 16 de marzo de 2009 se rindió un informe en el cual se concluyó que la dilación de diez años y medio de la jueza Pagani Padró en dictar sentencia constituyó una violación a su obligación de adjudicar con prontitud y en forma dili-gente, la cual “afectó adversamente la imagen de con-fianza, efectividad y diligencia de la que goza la Rama Judicial”. El informe recomendaba que el asunto fuese re-mitido a la Comisión de Disciplina Judicial (Comisión) para la acción que esta estimase correspondiente.
El asunto fue referido a la Comisión y, el 14 de abril de *557 2009, esta dictaminó que del informe sometido surgía que existía “base suficiente para establecer la posibilidad de violaciones a los Cánones 4, 8, 12 y 17 de Etica Judicial”. Informe sobre determinación de causa, pág. 3. Además, la Comisión dispuso que existía prueba de una posible viola-ción a la Regla 24 de las Reglas para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico (Reglas para la Administración), 4 L.P.R.A. Ap. II-B. Consecuentemente, ordenó que se presentara una querella contra la jueza Pagani Padró.
El 4 de mayo de 2009, la Oficina de Administración de los Tribunales presentó una querella donde se alegó que la querellada había incurrido en violaciones a los cánones antes mencionados, así como a lo dispuesto en la Regla 24 de las Reglas para la Administración. El 22 de junio de 2009, luego de una oportuna solicitud de prórroga, la querellada contestó la querella y negó los cargos imputados. En su contestación, aceptó “que tardó más de lo usual en dictar sentencia en el caso María Rodríguez, et al v. Universidad de Puerto Rico, pero dicho suceso [era] uno aislado que no representaba] la manera en la cual la Jueza atiende sus salas y resuelve sus casos”. Contestación a querella, pág. 23. Luego de un contencioso proceso de descubrimiento de prueba, las partes sometieron su Informe de Conferencia con Antelación a la Vista (Informe de Conferencia).
La vista en su fondo quedó pautada para el 13 de octu-bre de 2009. Llegada esa fecha, las partes informaron a la Comisión que habían llegado a un acuerdo mediante el cual, entre otras cosas, se daba por sometida la querella presentada por el expediente en autos. El acuerdo suscrito disponía que la querellante habría de retirar el tercer cargo imputado donde se alegaba violación al Canon 12 de Ética Judicial, 4 L.P.R.A. Ap. IV-B. La querellante recono-ció también la labor efectuada por la querellada durante sus años de servicio en la Rama Judicial. También aceptó que en la última evaluación que la Comisión de Evaluación *558 Judicial realizó sobre el desempeño de la jueza Pagani Pa-dró, ésta quedó ubicada “ ‘en un nivel 5 de ejecución, lo cual implica que sus ejecutorias sobrepasan por mucho lo espe-rado y contribuyen a proyectar un alto nivel de calidad’ Propuesta transaccional, pág. 2. La querellante también expresó que el “compromiso y dedicación” de la jueza Pa-gani Padró se “refleja [en] el trabajo de calidad que ha realizado”. Id.
Por su parte, la jueza Pagani Padró aceptó en el acuerdo suscrito que el trámite en el caso Rodríguez Casillas “no [fue] un ejemplo de la forma en que debe desempeñar su labor”. Propuesta transaccional, pág. 2. Reconoció “que un término de diez (10) años en dictar sentencia no es un tér-mino razonable”. íd. Además, aceptó que aun cuando las circunstancias del caso podrían explicarlo, es “una situa-ción que no debe repetirse”. íd. Finalmente, expresó ser consciente de la importancia y la necesidad de resolver los casos con prontitud y de solicitar recursos de la Oficina de Administración de los Tribunales para evitar dilaciones injustificadas. El caso quedó sometido a la consideración de la Comisión para su adjudicación final.
El 24 de noviembre de 2009 la Comisión, luego de “ana-lizar las estipulaciones de hechos, la prueba documental estipulada por ambas partes y el contenido de la ‘Propues-ta Transaccional’ ”, emitió su informe. Informe de la comi-sión, pág. 5. En éste exoneró a la jueza Pagani Padró de haber incurrido en “conducta constitutiva de infracción a los Cánones de Ética Judicial por la dilación en resolver el caso Rodríguez Casillas por tratarse de un solo caso en el historial profesional de ésta”. íd., pág. 23. Se indicó, ade-más, lo siguiente:
El caso Rodríguez Casillas fue uno sumamente complejo, de abundante prueba documental y testifical, el cual se celebró de forma fragmentada durante el transcurso de tres años. Además debemos señalar que del expediente no se desprende que se haya realizado gestión administrativa dirigida a dar *559 seguimiento a la resolución del caso después que el expediente fue enviado al Tribunal de San Juan. íd.
El Comisionado Asociado, Ledo. Carlos Ramos Gonzá-lez, emitió un voto explicativo. En éste indicó que, a su juicio, la tardanza de un juez en adjudicar finalmente un caso “no constituye de por sí una violación a la ética judicial”. Voto explicativo del Comisionado Asociado, Ledo. Carlos E. Ramos González, pág. 1. Ahora bien, también reconoció que “una tardanza indebida podría constituir una violación” a las normas éticas judiciales. (Énfasis en el original.) íd. Sobre este caso en particular, el comisionado asociado Ramos González indicó lo siguiente: “la totalidad de las circunstancias de este caso apuntan hacia una vio-lación a la ética por una tardanza indebida al resolver un caso.” (Énfasis en el original.) íd., pág. 2. No obstante, con-cluyó que ante la ausencia de expresión previa de parte de este Tribunal respecto a este asunto, tenía dudas “si en efecto queda satisfecho el quantum de prueba requerido en un proceso como éste ...”. íd. Coincidió con la Comisión, no obstante, en que el historial de servicios de la jueza Pagani Padró sirve de balance y contrapeso a cualquier posible sanción, por lo que consideró correcto que no se le sancionara.
El 15 de octubre de 2009 la Directora Administrativa de los Tribunales solicitó una reconsideración de la determi-nación de la Comisión, a lo cual se opuso la parte querellada. El asunto quedó así sometido ante nuestra consideración.
II
Habida cuenta de que en este caso no se celebró una vista en su fondo y que las determinaciones de hechos de la Comisión se basaron, sustancialmente, en las estipulacio-nes de hechos de ambas partes, según recogidas en el In- *560 forme de Conferencia, así como en la prueba estipulada, debemos repasar tales determinaciones de hechos, previo a atender los méritos de la controversia planteada. A conti-nuación, los más relevantes:
1. La investigación administrativa que dio base a la querella de epígrafe comenzó con la presentación de una queja jura-mentada contra la Jueza Carmen Heydee Pagani Padró [(la jueza Pagani Padró o la jueza)] por los señores [A] ngel Alberto Pagán Ramos, Ana Hilda García Santana y René Pagán Gar-cía el 12 de marzo de 2008, quienes comparecieron como de-mandantes en el caso de María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros, Civil Núm. FDP-90-0309.
2. La demanda en el caso de María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros, Civil Núm. FDP-90-0309, se presentó en la Secretaría del Tribunal de Primera Instancia en Carolina el 18 de junio de 1990.
4. La [jueza] Pagani Padró fue nombrada Jueza Superior el 25 de enero de 1990.
4. La [jueza] fue designada como Jueza Superior del Tribunal de Primera Instancia de Mayagüez el 12 de febrero de 1990, donde estuvo asignada hasta el 14 de marzo de 1991.
5. Efectivo el 15 de marzo de 1991 la [jueza] Pagani Padró fue trasladada al Tribunal de Primera Instancia de Carolina.
8. Efectivo el 22 de abril de 1997 la [jueza] fue trasladada al Tribunal de Primera Instancia de San Juan, donde actual-mente contin[ú]a asignada.
15. El 5 de abril de 1991 surge [su] primera intervención ... en el caso María Rodríguez Casillas y Otros vs. Dr. Fulano Her-nández y Otros, Civil Núm. FDP-90-0309 en la Sala 401.
16. [L]a vista en su fondo del caso ... comenzó el 25 de octubre de 1993 y culminó el 10 de octubre de 1996.
17. La vista en su fondo se extendió por más de 30 días, donde la prueba documental y testifical fue voluminosa, se presenta-ron un total de 13 peritos médicos, 18 médicos que intervinie-ron en el tratamiento brindado al occiso y/o que testificaron sobre el funcionamiento de las facilidades hospitalarias en las que el occiso fue atendido, y 17 testigos adicionales.
18. Finalizado el desfile de prueba el 10 de octubre de 1996, [la jueza] requirió [a las partes] someter por Memorandos de De-terminaciones de Hechos.
*561 22. El 6 de marzo de 1997 quedó sometido para resolución el caso de María Rodríguez Casillas y Otros vs. Dr. Fulano Her-nández y Otros, Civil Núm. FDP-90-0309.
23. El 14 de marzo de 1996 la Jueza ... fue notificada que sería relevada de Sala del 1 al 30 de abril de 1996 para resolver los casos que tenía sometidos y pendientes de resolver.
25. Mediante carta de 4 de marzo de 1997 se notificó a la [jlueza ... que sería relevada de Sala del 10 al 31 de marzo de 1997 para que resolviera los casos que tenía sometidos y pen-dientes de resolver, además se le instruyó que tenía que repor-tarse al Instituto de Estudios Judiciales.
26. Mediante carta de 9 de abril de 1997 se notificó a la fj]ueza ... que efectivo el 22 de abril de 1997 sería trasladada como Jueza Superior al Tribunal de San Juan.
.. Mediante carta de 9 de abril de 1997 a su vez se [le] notificó ... que continuaría relevada de Sala para finalizar los casos que tenía sometidos y pendientes de resolver de las Salas de Carolina y Mayagüez.
28. [S]e le requirió ... someter un inventario de casos al Juez Administrador de la Región de Carolina sobre los casos que traería consigo para resolver en el Instituto de Estudios Judiciales.
31. Al momento del traslado [a San Juan] de la parte quere-llada, ... el expediente judicial del caso María Rodríguez Ca-sillas y Otros vs. Dr. Fulano Hernández y Otros, Civil Núm. FDP-90-0309, permaneció por instrucciones de la Jueza Pa-gani Padró, bajo la custodia de [la] Secretar [í] a del Tribunal de Carolina debido a que el expediente era voluminoso.
34. El 14 de jimio de 2000 la Jueza Maritza Ramos Mercado [(Jueza Administradora de la Región Judicial de Carolina) ordenó] el traslado al Tribunal de San Juan [del] expediente judicial del caso María Rodríguez Casillas y Otros vs. Dr. Fu-lano Hernández y Otros, Civil Núm. FDP-90-0309, para acción correspondiente.
35. El 27 de diciembre de 2000 el Ledo. Luis R. Mellado Gonz[á]lez(2) remitió a la atención de la jueza ..., en respuesta a una solicitud de ésta, copia de su escrito titulado: “Relación *562 de Hechos Pertinentes a la Reclamación de la Parte Deman-dante y a la Configuración de Responsabilidad Solidaria de los Demandados” y disco WP 5.1 en que se encontraba grabado el escrito, el cual había sido sometido a la atención de la jueza ... el 5 de marzo de 1997.
36. El 19 de septiembre de 2005 el Ledo. Luis R. Mellado Gon-zález presentó escrito en que solicitó ... resolver el caso de María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros, supra, lo antes posible.
38. En diciembre de 2005 la jueza ... dialogó en corte abierta con el Ledo. Luis F. Montijo Colón,(3) quien se encontraba en el Tribunal en otro caso, para que se comunicara con todos los abogados en el caso de María Rodríguez Casillas y Otros vs. Dr. Fulano Hernández y Otros, supra, y les preguntara la fe-cha que más les convenía a ella [sic] notificar la Sentencia.
39. El consenso entre los abogados y que le fue notificado a la jueza ... era que notificara la Sentencia después del 16 de enero de 2006.
40. A petición de la Jueza ... Pagani Padró, el 11 de enero de 2006 el Ledo. Luis F. Montijo Colón se comunicó con los otros abogados en el caso [Rodríguez Casillas] ... para coordinar una reunión con la jueza....
41. El propósito de la reunión ... era auscultar con los aboga-dos la posibilidad de alcanzar una transacción en el caso.
42. El 27 de junio de 2006 se sostuvo una reunión en el Tribunal de San Juan con la jueza ... [y los abogados de las partes. Éstos no llegaron a un acuerdo.]
44. El 19 de julio de 2006 ... [se] sostuvo en el Tribunal de San Juan una segunda reunión ... para auscultar la posibili-dad de una transacción, pero la misma no se logró.
46. Las reuniones sostenidas el 27 de junio y el 19 de julio de 2006 se coordinaron a petición de la jueza ... Pagani Padró, para dialogar con los [abogados de las partes] sobre un posible acuerdo transaccional.
47. El 23 de febrero de 2007 el Ledo. Luis R. Mellado Gon-zález radicó [una] “Moción Urgente para que se Dicte Senten-cia”. ...
48. De la oficina de la jueza ... Pagani Padró se comunicaron *563 con la oficina de la Leda. Sigrid López González(4) para que le remitieran copia del Memorando de Determinaciones de He-chos preparado por la [licenciada] ... López González en enero de 1997 como representante legal de la Universidad de Puerto Rico.
49. El 2 de mayo de 2007 ... se notificó por correo electrónico a la oficina de la Jueza ... Pagani Padró el Memorando de Determinaciones de Hechos preparado por la Leda. Sigrid Ló-pez González ....
50. El 4 de mayo de 2007 notificada a las partes el 14 de mayo de 2007 la jueza Pagani Padró dictó Sentencia en el de caso María Rodríguez Casillas y Otros vs. Dr. Fulano Hernán-dez y Otrosí,] Civil Núm. FDP-90-0309.
52. La queja que dio inicio a la querella de epígrafe ... fue presentada aproximadamente diez (10) meses luego de la no-tificación de la Sentencia. Informe de Conferencia, págs. 13-20.
Una vez repasados detenidamente los hechos que le sir-ven de trasfondo a la controversia ante nuestra considera-ción, debemos considerar la normativa jurídica aplicable.
III
A. Al acercarnos al asunto que está ante nuestra con-sideración, a saber, cuándo la dilación en resolver un caso sometido se configura contraria a la exigencia ética de diligencia que tiene todo juez, advertimos que este es un tema sobre el cual no nos habíamos expresado en el pasado. Somos conscientes, sin embargo, que el tema de la lentitud en la administración de justicia es un tema que ha suscitado, de siempre, innumerables críticas y severos comentarios. “Si las funciones principales que se asignan al Derecho en una sociedad democrática son las de garan-tizar la libertad, la justicia y la seguridad, es evidente que *564 éstas resultarán” en letra muerta si el acceso efectivo de los particulares a los órganos encargados de su administra-ción “no va acompañado de la específica garantía de una solución pronta y rápida de la cuestión litigiosa o del asunto controvertido que a ellos se someta”. M.L. Marín Castán, La polémica cuestión de la determinación del “plazo razonable” en la administración de justicia, Año 4 (Núm. 10) Rev. Española Der. Const. 215, 215-216 (1984). Véase I. Diez-Picazo, Poder Judicial y responsabilidad, La Ley, 1990, pág. 96. Véanse, además: S. Benham, Note: Judicial Purgatory: Strategies for Lawyers, 58 Drake L. Rev. 585 (2010); Seminario sobre la Demora Judicial, 77 (Núm. 4) Rev. Jur. U.P.R. (2008); R. Miner, Judicial Ethics in the Twenty-First Century: Tracing Trends, 32 Hofstra L. Rev. 1107 (2004); C. Stewart, Abuse of Power & Judicial Misconduct: A Reflection on Contemporary Ethical Issues Facing Judges, 1 U. St. Thomas L.J. 464 (2003); B. Selya, Thoughts from the Bench: The Confidence Game: Public Perceptions of the Judiciary, 30 New Eng. L. Rev. 909 (1996).
Señalamientos como ese han provocado que los Poderes Judiciales de Iberoamérica —entre ellos la Rama Judicial del Estado Libre Asociado de Puerto Rico— elaboraran va-rias declaraciones a propósito de atender las dificultades que enfrentan las personas cuando pretenden hacer valer sus derechos ante los tribunales. Por ejemplo, han con-cluido que “[t]odas las personas tienen derecho a una tra-mitación ágil de los asuntos que le afecten, que deberán resolverse dentro del plazo legal y a conocer, en su caso, el motivo concreto del retraso”. Art. 20 de la Carta de Dere-chos de las Personas ante la Justicia en el Espacio Judicial Iberoamericanao, VII Cumbre Iberoamericana de Presi-dentes de Cortes Supremas y Tribunales Supremos de Jus-ticia (2002). Así también, han afirmado que “[t]odas las personas tienen derecho de acuerdo con arreglo a la nor-mativa interna a exigir responsabilidades por error judi *565 cial o por el funcionamiento anormal de la Administración de Justicia.” Id., Art. 19. Cf.: Exposición de Motivos, Reglas de Brasilia sobre Acceso a la Justicia de las Personas en condición de Vulnerabilidad, XIV Cumbre Judicial Ibero-americana (2008) (“El sistema judicial se debe configurar, y se está configurando, como un instrumento para la de-fensa efectiva de los derechos de las personas en condición de vulnerabilidad. Poca utilidad tiene que el Estado reco-nozca formalmente un derecho si su titular no puede acce-der de forma efectiva al sistema de justicia para obtener la tutela de dicho derecho”).
La garantía del disfrute pleno de los derechos a través de recursos efectivos ante los foros judiciales, forma parte incluso de uno de los documentos que inspiró nuestra Constitución: la Declaración Universal de Derechos Humanos. Véanse: Arts. 8 y 10 de la Declaración Universal de Derechos Humanos, en http://www.un.org/es/ documents / udhr /; López Vives v. Policía de P.R., 118 D.P.R. 219, 226 (1987). Por otro lado, la dilación irrazona-ble de los procedimientos judiciales —tanto en materia civil como penal— se considera una violación de derechos humanos en los sistemas regionales interamericano, euro-peo y africano. Véanse: Arts. 7.5, 8.1 y 25.1 de la Conven-ción Americana sobre Derechos Humanos, en http.7 / www. cidh.org/basicos/basicos2.htm; Art. 6.1 del Convenio para la Protección de los Derechos Humanos y de las Libertades Fundamentales, en http://www.fundacionpdh.org/ normativa / normas / europa / CEDH / 1950-ConvenioProtec cionDerechosHumanosyLibertadesFundamentales.htm; Art. 7 de la Carta Africana sobre los Derechos Humanos y de los Pueblos.
A los fines de evaluar la razonabilidad de la duración de los procedimientos, la Corte Europea de Derechos Huma-nos ha elaborado un examen que debe aplicarse caso a caso, y que toma en consideración las circunstancias parti-culares atinentes a cada una de las controversias, para *566 concluir si ha sido razonable o no una dilación. Este análi-sis requiere ponderar la naturaleza del pleito; las actuacio-nes de las autoridades del Estado, así como las del peticionario, y los intereses que se afectan por la dilación. Véanse: Corte Eur. D.H., Rumpfv. Germany, Núm. 46344/ 06, Sec. 41, 2 de septiembre de 2010; Corte Eur. D.H., Frydlender v. France [GS], Núm. 30979/96, See. 43, ECHR 2000-VTI. La jurisprudencia de esta Corte sobre el tiempo razonable de los procedimientos judiciales, además de ser abundante, se ha convertido en un importante referente para otros foros responsables de velar por los derechos fun-damentales de las personas. Véanse: F. Edel, The length of civil and criminal proceedings in the case-law of the European Court of Human Rights, 2da ed., Council of Europe Publ., 2007; Corte I.D.H., Suárez Rosero v. Ecuador, Sen-tencia de 12 de noviembre de 1997, Sec. 72, Serie C Núm. 35; Corte I.D.H., Genie Lacayo v. Nicaragua, Sentencia de 29 de enero de 1997, See. 77, Serie C Núm. 30.
A la luz de la totalidad de las circunstancias, la Corte Europea de Derechos Humanos ha catalogado como irrazo-nable: un periodo de cuatro años durante el cual una Corte Suprema Administrativa se reservó su determinación; pe-riodos de dos años y ocho meses, así como dos años y un mes, que transcurrieron antes que dos cortes de distrito dictaran sus sentencias, y un periodo de dos años que tar-dara una corte de primera instancia en emitir su fallo. De Moor v. Belgium, 23 de junio de 1994, See. 67, Series A Núm. 292-A; Biondi v. Italy, 26 de febrero de 1992, Sec. 18, Series A Núm. 228-C; Shacolas v. Cyprus, Núm. 47119/99, See. 123, 4 de mayo de 2006; Unión Alimentaria Sanders S.A. v. Spain, 7 de julio de 1989, See. 36, Series A Núm. 157. Véanse además, sobre la inexcusabilidad de dilaciones irrazonables provocadas por un alto volumen de trabajo: Thlimmenos v. Greece [GS], Núm. 34369/97, Secs. 61-62, ECHR 2000-IV; Mavronichis v. Cyprus, 24 de abril de 1998, See. 39, Reports of Judgments and Decisions 1998-11.
*567 B. En lo que nos concierne directamente, considero que nuestro norte debe ser instaurar el ejercicio responsa-ble y diligente del Poder Judicial como un valor preemi-nente para el estado de derecho. Ese ejercicio responsable supone que, en el descargo de sus funciones, los jueces ac-túen con competencia y aptitud, independencia, diligencia, imparcialidad e integridad. Ello a su vez requiere, como contrapunto, un riguroso régimen disciplinario. En este rigor, los Cánones de Ética Judicial pretenden guiar el com-portamiento de los miembros de la Judicatura para hacer realidad esa expresión deontológica, fomentando de esta forma el respeto y la confianza del pueblo en su sistema judicial.
El Preámbulo de los Cánones de Ética Judicial declara: “[C]orresponde al Poder Judicial la función de interpretar las leyes y resolver los casos y las controversias de forma rápida, eficiente, sensible y justa.” (Énfasis nuestro.) 4 L.P.R.A. Ap. IV-B. Esta declaración general nos sirve de guía en la interpretación de las disposiciones específicas del cuerpo de normas éticas. Hemos enfatizado en el pa-sado que es labor indelegable de “los tribunales de primera instancia ... velar y garantizar que los procedimientos y asuntos se ventilen sin demora, lo cual constituye la polí-tica judicial establecida por este foro con miras a lograr una justicia rápida y eficiente”. (Énfasis nuestro.) Heftier Const. Co. v. Tribunal Superior, 103 D.P.R. 844, 846 (1975). Véase, también, Fine Art Wallpaper v. Wolff, 102 D.P.R. 451 (1974).
Por otro lado, el Canon 4 de Ética Judicial impone a todos los jueces la obligación de cumplir “cuidadosa y dili-gentemente las obligaciones administrativas que les impo-nen las leyes y los reglamentos aplicables a la Rama Judicial”. 4 L.P.R.A. Ap. IV-B. En cuanto al ámbito del ejer-cicio de sus funciones judiciales, el Canon 8 de Ética Judicial exige que los jueces sean “laboriosos, prudentes, sere-nos e imparciales”. 4 L.P.R.A. Ap. IV-B.
*568 El Canon 17 de Ética Judicial plasma el deber de dili-gencia del juez al exigirle que sea “diligent[e] en la administración del proceso judicial de los asuntos someti-dos ante su consideración . ,.”.(5) 4 L.P.R.A. Ap. IV-B. Así debe ser. Juzgar, después de todo, es una actividad obliga-toria y consustancial con la esencia misma de ser instructor de causas. R. Hernández Marín, Las obligaciones bási-cas de los jueces, Madrid, Marcial Pons Ediciones Jurídicas y Sociales, 2005, pág. 20.
Así también, las Reglas para la Administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico regulan los procesos administrativos en nues-tros tribunales. Estas deben interpretarse “de forma tal que en la administración del sistema judicial se garantice en todo momento un servicio rápido y eficiente ... a los ciu-dadanos ...”. (Énfasis nuestro.) Regla 2 de las Reglas para la Administración, 4 L.P.R.A. Ap. II-B. En este tenor, la Regla 24(a) ordena lo siguiente: “Los casos contenciosos atendidos en sus méritos y las mociones de sentencia su-maria se resolverán dentro de los noventa (90) días a partir de la fecha en que queden sometidos para adjudicación .... No obstante, [podrá extenderse el término], razonable-mente, cuando la naturaleza del asunto o alguna causa extraordinaria lo hagan necesario.” (Énfasis nuestro.) 4 L.P.R.A. Ap. II-B, C. 24(a).
De lo anteriormente expuesto queda claro que nuestro ordenamiento propulsa la solución rápida y eficiente de los asuntos ante los tribunales estableciendo para ello, en ca-sos contenciosos sometidos para adjudicación, un término de 90 días para dictar sentencia. Y es que la formulación de la decisión que pone fin al litigio es “la culminación del *569 proceso decisorio, es la que merece el nombre de ‘acción de juzgar’, en el sentido de resolver el litigio ‘decretando’ o ‘dictando’ algo, o ’sentenciando’ (Enfasis suprimido.) Her-nández Marín, op. cit., pág. 20.
El deber de diligencia del juez del que habla el Canon 17 tiene que conjugarse con el término provisto en esta Regla 24(a). Es por ello que este término es obligatorio para todos los jueces del Tribunal de Primera Instancia. Subyace a este plazo el reconocimiento de que una justicia tardía equivale a la denegación de la justicia misma. “Con acierto se sostiene que es nota constitutiva de la justicia el tiempo oportuno, por lo que una dilación en la respuesta judicial puede ser una fuente de injusticia.” R.L. Vigo, Etica y Res-ponsabilidad Judicial, Buenos Aires, Rubinzal-Culzoni Editores, 2007, pág. 38.
Ello no obstante y partiendo de la premisa de que un procedimiento judicial conlleva la realización de sucesivos trámites por distintos actores, los cuales muy a menudo son incompatibles con una respuesta judicial rápida y tem-pestiva, el ordenamiento también admite un aplazamiento razonable del término reglamentario, como surge del pro-pio texto de la Regla 24(a), in fine, de las Reglas para la Administración. A fin de cuentas, lo que se persigue es que el proceso sea sin dilaciones indebidas, es decir, un proceso que se desarrolle en tiempo razonable atendiendo a las exi-gencias de una buena administración de la justicia según las circunstancias particulares del caso.
El criterio de razonabilidad que demanda la Regla 24(a) de las Reglas para la Administración es, de suyo, un con-cepto indeterminado que requiere, para su concreción, la aplicación de criterios objetivos. Así, para considerar si el aplazamiento del término de 90 días ha sido razonable, tenemos que ponderar varios factores, a saber: la comple-jidad del litigio, la conducta de los litigantes, las actuacio-nes de las autoridades judiciales, la naturaleza de los re-clamos de los litigantes y, finalmente, el lapso de tiempo *570 aplazado. Si, realizado ese análisis, se concluye que el retraso es irrazonable, nos encontramos frente una dila-ción indebida contraria a las obligaciones éticas del juez. De igual forma, una dilación extrema en la resolución de-finitiva del caso, ante la totalidad de las circunstancias, en ocasiones podría conllevar una violación ética de por sí.
El primero de los criterios antes mencionados se refiere a la complejidad de los hechos o la complejidad jurídica del asunto que pende ante el tribunal. No puede existir com-plejidad en los hechos cuando estos resultan evidentes o de fácil corroboración. Tampoco puede concluirse que se trata de un caso que revista complejidad jurídica si se trata de la aplicación de normas sencillas y claras de derecho sustantivo.
Por otro lado, el comportamiento de las partes —es de-cir, de los litigantes y los funcionarios judiciales— es otro de los criterios a ponderar. La actitud del litigante debe ser siempre diligente, tanto en la tramitación del proceso como en la denuncia de las dilaciones. Véase Canon 12 del Có-digo de Ética Profesional, 4 L.P.R.A. Ap. IX. Véase además, aunque en otro contexto, Bco. Des. Eco. v. AMC Surgery, 157 D.P.R. 150, 157 (2002). Si su conducta ha sido obstruc-cionista, hecho un reclamo de dilación injustificada, este adolecerá de eficacia.
Igualmente, los jueces deben actuar con diligencia y prontitud por imperativo de los Cánones de Ética Judicial, así como por las obligaciones impuestas en las Reglas para la Administración. Al considerar un reclamo de dilación indebida, hay que evaluar si la presunta tardanza es el resultado de la acción o de la inacción del magistrado. Cabe destacar que el volumen de trabajo que pese sobre el juez no puede ser justificación para que la resolución final de un caso se retrase irrazonablemente, pues subsiste siem-pre el deber de diligencia de finiquitar los asuntos someti-dos dentro del término provisto en la Regla 24(a) de las Reglas para la Administración, supra. Ahora bien, se ha *571 reconocido que la carga de trabajo puede muy bien consi-derarse como un factor mitigante. Para que ello sea así, el juez debe haber tomado medidas afirmativas para atender los asuntos atrasados, atenuando de esta forma los efectos perjudiciales que el retraso de los asuntos ante su conside-ración pueda causar. J. Alfini, S. Lubet, J. Shaman y C. Geyh, Judicial Conduct and Ethics, 4ta ed., Ed. Lexis Nexis, Sec. 6.02D, págs. 6 — 19 (“heavy workload generally has been considered only in mitigation and not as a complete defense to failure of prompt disposition charges”).(6)
El examen de la alegada dilación indebida quedará ma-tizado por la naturaleza de los reclamos de los litigantes que se vean afectados por la duración del procedimiento. De manera que el análisis será más riguroso cuando el tribunal hubiera tenido ante su consideración reclamacio-nes importantes que ameritaran una pronta solución. Sú-plicas de derechos fundamentales, relaciones de filiación y protecciones laborales, son sólo algunas de las reclamacio-nes que merecen especial atención del juzgador, dentro del deber general de diligencia que permea el mandato judicial.
Por último, habrá que considerar el lapso de tiempo del retraso. Evidentemente no es equiparable un retraso de meses en la resolución de un caso sometido para su adju-dicación, a un retraso de años.
Frente a un reclamo como el que nos ocupa en esta oca-sión, estamos obligados a evaluar la conducta del magis-trado tomando en consideración la interacción de las nor-mas éticas y reglamentarias antes discutidas.
*572 IV
En este caso la querellada ha aceptado que el término de diez años para dictar sentencia en Rodríguez Casillas “no es un término razonable” ni es “un ejemplo de la forma en que debe desempeñar su labor”. Ello no obstante, la Comisión concluyó que no se configuró una violación ética por cuanto se trató de una situación aislada en el historial profesional de la jueza, además de que el caso fue complejo y de que la Administración de los Tribunales no realizó gestión administrativa alguna dirigida a atender este asunto. La posición de la querellada es, esencialmente, igual a la que esgrime la Comisión. La Administración de los Tribunales, por el contrario, asevera que “la aceptación y reconocimiento de la propia parte querellada” de que el término que se tomó para resolver el caso no fue razonable, obliga a concluir que esta incurrió en una violación a la Regla 24(a) y, por lo tanto, en violaciones de carácter ético que requieren se le sancione.
Hemos indicado en el pasado que no estamos obligados a acoger en su totalidad el informe que nos remite la Co-misión, pues lo podemos rechazar —totalmente o solo una parte— o modificar. In re Hon. Maldonado Torres, 152 D.P.R. 858 (2000); In re Moreira Avillán, 147 D.P.R. 78, 86 (1998).
Un examen minucioso, objetivo e imparcial del informe que nos sometiera la Comisión, así como de la extensa prueba documental que consta en autos, nos mueve a, vía excepción, considerar que se deben modificar las determi-naciones de la Comisión, por lo que no acogeríamos su con-clusión de que la querellada no incurrió en una conducta contraria a los postulados éticos que rigen el desempeño judicial. Debemos reconocer, no obstante, que el asunto tratado por la Comisión no había sido atendido por este Tribunal en el pasado, por lo que no se contaba con una expresión clara sobre cuándo y bajo qué circunstancias la *573 tardanza en dictar sentencia en un caso se configuraba como una violación de la ética judicial.
Como indicamos, a la querellada le tomó diez años dic-tar sentencia en un caso que tenía sometido ante su consideración. Considero que ese término, de por sí, es irrazonable.(7) Si bien no todo incumplimiento del plazo de 90 días es constitutivo de una falta ética, pues éste admite su aplazamiento, un retraso de diez años no es razonable. Una dilación de esa magnitud implica, de suyo, una viola-ción ética, salvo que se trate de circunstancias extraordi-narias, como por ejemplo, de carácter estructural que im-pidan el desempeño de la función judicial con normalidad.
Coincidimos con la Comisión cuando concluye que el caso ventilado ante la sala de la jueza Pagani Padró fue complejo en virtud de la voluminosa prueba documental y testifical presentada, y que se celebró de forma fragmen-tada durante el transcurso de tres años. Todo ello, cierta-mente, dificulta la tarea del juez y hace más trabajoso la función de dictar sentencia. Ello, sin embargo, no es sufi-ciente para justificar una tardanza de diez años para dar por concluido un litigio. Una década es un período excesi-vamente largo para tener bajo consideración un caso ya sometido.
En casos como estos es imprescindible que el magis-trado lleve a cabo gestiones afirmativas para solicitar ayuda de la Administración de los Tribunales para poder *574 concluir el asunto en un lapso de tiempo razonable. La Ad-ministración, a su vez, está obligada a relevar de sala al magistrado o a asignarle recursos humanos adicionales que le permitan al juez resolver con prontitud el caso o los casos sometidos. Sin embargo, no debemos perder de vista que la responsabilidad primaria recae, necesariamente, so-bre el juez, pues es éste quien tiene la obligación ética de resolver con diligencia los casos sometidos a su consideración. “[E]l derecho impone a los jueces ... la obli-gación de juzgar ....’’Hernández Marín, op. cit., pág. 20.
No surge del expediente de este caso que la jueza Pa-gani Padró hubiese solicitado de la Administración de los Tribunales ser relevada de sala para atender este caso y disponer del mismo, o que hubiese solicitado la asistencia de personal adicional con este propósito. Lo que sí surge del expediente es que en dos ocasiones después de que este caso quedó sometido para resolución, la jueza Pagani Pa-dró fue relevada de Sala por la Administración a petición del Juez Administrador de la Región Judicial de Carolina, para que esta atendiese los casos que tenía sometidos. Este caso sin embargo, no fue uno de los que atendió.
Una lectura somera de la sentencia desestimatoria dic-tada en este caso pone de manifiesto que la querellada adoptó, casi en su totalidad y verbatim, el memorando de determinaciones de hechos sometido por la licenciada Ló-pez González.(8) Este documento fue sometido ante la con-sideración del tribunal a petición de la jueza como meca-nismo auxiliar para la resolución del caso, pero no fue sino hasta diez años más tarde que se acogió.
Por otro lado, la Comisión concluyó que la tardanza de la jueza en resolver Rodríguez Casillas fue una actuación aislada “en el historial profesional” de la jueza Pagani *575 Padró. No podemos coincidir con esta conclusión de la Comisión. Surge del expediente ante nuestra considera-ción, como se indicó, que la jueza Pagani Padró, mientras estuvo asignada al Tribunal de Primera Instancia de Carolina, fue relevada de Sala en tres ocasiones a petición del Juez Administrador de la región, a saber: en mayo de 1996 (desde el 1 de mayo hasta el 21 de mayo de 1996), en marzo de 1997 (del 10 de marzo al 31 de marzo de 1997), y en abril de 1997 (desde el 9 de abril hasta el 21 de abril de 1997). Las cartas enviadas a la jueza Pagani Padró clara-mente expresan que el propósito del relevo era que ésta atendiera los casos que tenía sometidos y pendientes de resolución. En la última de estas comunicaciones se señala específicamente su relevo, el cual era para atender casos “pendientes de resolver de la Sala de Carolina y Mayagüez”. Recordemos que ésta estuvo asignada a Maya-güez hasta marzo de 1991, por lo que seis años más tarde todavía tenía casos sometidos de dicha región judicial sin resolver. Todo ello, a nuestro juicio, apunta hacia un patrón de tardanza en su función adjudicativa y una desatención a su deber de diligencia.
Considero, no obstante, que no es indispensable estable-cer un patrón de tardanza en la resolución de casos para considerar que ha habido una violación a los Cánones de Etica Judicial por tardanza indebida. Puede ocurrir que la tardanza de un solo caso sea suficiente para configurarse una violación ética. Ello dependerá de los hechos particu-lares del caso y del lapso de tiempo de la demora.
Por otro lado, destacamos que por instrucciones de la jueza Pagani Padró, el expediente del caso Rodríguez Ca-sillas se quedó en la Secretaría del Tribunal de Primera Instancia, Sala de Carolina, cuando ella fue trasladada a San Juan en abril de 1997. A esos efectos, en la carta que ésta le enviara al Juez Administrador de la Región Judicial de Carolina detallando los casos que llevaría consigo a San Juan, específicamente se indicó que el expediente del caso *576 Rodríguez Casillas, el cual tenía “una voluminosa prueba documental ... habrá de permanecer bajo la custodia de Secretaría hasta tanto llegue el momento de resolverlo”. (Énfasis nuestro.)
Así, cualquier moción que se presentara en Carolina en el caso Rodríguez Casillas era luego remitida por la Secre-taria Regional a la jueza Pagani Padró al Tribunal de San Juan, para su atención. Ciertamente, esta no es la manera más eficiente de trabajar los casos. No albergamos duda de que este hecho contribuyó al trámite azaroso de este caso. Hay que enfatizar que fue la propia jueza Pagani Padró quien decidió que el expediente permanecería en Carolina, “hasta tanto llegue el momento de resolverlo”. No fue sino hasta junio de 2000 que la Jueza Administradora de Carolina remitió al Tribunal de San Juan el expediente de este caso.
La Comisión afirmó en su Informe que “después que el caso se encontraba sometido en sus méritos, la Jueza Pa-gani Padró continuó realizando gestiones para auscultar la posibilidad de que las partes alcanzaran una transacción en el caso”. Informe de la Comisión, pág. 25. Lo cierto es que las gestiones que llevó a cabo la jueza Pagani Padró sobre este particular ocurrieron luego de que en septiem-bre de 2005 el licenciado Mellado González, abogado de los demandantes, presentara una moción titulada “Moción In-formativa”, en la cual solicitaba que el caso fuese resuelto lo antes posible. En ese momento, ya habían transcurrido ocho años desde que el caso quedó sometido para resolución. A nuestro juicio por lo tanto, las reuniones sos-tenidas con la jueza a principios de 2006 no tienen el al-cance y el efecto que la Comisión les imparte. Ya en ese momento había transcurrido un periodo de tiempo irrazo-nable desde que el caso quedó sometido sin que se hubiese dictado sentencia.
No hay duda que el abogado de la parte demandante pudo haberle llamado la atención a la jueza de que el caso *577 languidecía, mucho antes de lo que lo hizo, a saber: ocho años después de que quedó sometido. Pero esa falta de diligencia del abogado para con —a fin de cuentas— los in-tereses de su cliente, no supone, como intima la mayoría, que opere para liberar a la magistrada del cumplimiento de una obligación de carácter ético. Las obligaciones éticas son personalísimas y no dependen de lo que otro haga o deje de hacer. La ética judicial tiene como objeto formal “establecer qué es lo que corresponde exigirle al juez en orden a convertirlo en el mejor juez posible” para beneficio de la sociedad a la que le sirve. Vigo, op. cit., pág. 15.
Asimismo, estimo alarmante que la mayoría del Tribunal exprese que la mera dilación en dictar sentencia no puede constituir violación de deber ético alguno y que, por ello, limite la inferencia de la Comisión de Disciplina Judicial para atender querellas fundadas en dicho retraso. La Opinión del Tribunal se esfuerza por justificar su determi-nación lanzando algunos “factores exógenos a los jueces” que “podrían” ser los causantes de la demora, entre estos: la sobrecarga de trabajo, la complejidad de los casos y que las partes no le recuerden al juez cumplir con sus deberes éticos, entiéndase, resolver con prontitud. No parece cohe-rente tal razonamiento. La posición adoptada por la mayo-ría del Tribunal, de negarse a pasar juicio sobre actuacio-nes que presentan claras desviaciones de los deberes éticos de los miembros de la Judicatura, porque existe la posibi-lidad de que las mismas estén justificadas, a mi juicio es insostenible. En la medida en que la mayoría del Tribunal se niega examinar la conducta de un juez que prolonga por años la tan esperada Justicia, este Foro en efecto crea una regla per se bajo la cual quedan justificadas todas las dila-ciones en las que incurran los magistrados para dictar sentencia.
La tardanza incurrida en este caso no permitió tutelar de manera efectiva el derecho de las partes a recibir pronta satisfacción. La dilación tuvo como resultado que perdu- *578 rara la angustia de unos familiares por un periodo de tiempo insostenible. Pero además, y más importante, em-pañó la imagen de eficacia de la Rama Judicial, lo que tiene como corolario que aumente el reproche ciudadano. El respeto de la ciudadanía para con la Judicatura puerto-rriqueña “no puede simplemente exigirse, sin más. Se lo tienen que ganar los miembros [de la Judicatura] con su proceder”. E. Rivera Ramos, Poder sin legitimidad, www.elnuevodia.com / columna-poder sinlegitimidad819 625.html. Cuando no exigimos de nuestros jueces que cum-plan a cabalidad con las normas éticas que rigen su com-portamiento y que demandan la mayor diligencia y laborio-sidad en el descargo de sus labores, empañamos la imagen de todos los jueces.
Quienes acuden a un tribunal a dirimir sus diferencias tienen derecho a que su proceso se resuelva en un plazo razonable; es decir, toda persona tiene derecho a un proceso sin dilaciones indebidas. La administración de la justicia tiene un carácter de servicio público que no debemos olvi-dar o soslayar. Por lo tanto, tiene que ofrecer respuestas con parámetros de máxima calidad, laboriosidad, transpa-rencia, agilidad y en tiempo razonable.
Para resumir, conforme a los hechos antes relatados, el tiempo transcurrido en exceso —diez años— no encuentra justificación en ninguno de los criterios objetivos que he-mos identificados para determinar la razonabilidad del plazo que tomó dictar sentencia. La prueba en este caso de que ello es así es robusta y convincente.
Antes bien, es menester, en Justicia a todas las partes involucradas, ser consciente de que esta es la primera oca-sión en que nos expresamos sobre las circunstancias bajo las cuales un juez puede incurrir en una violación ética por su tardanza en resolver un caso que tiene sometido ante su consideración y determinar los parámetros que nos llevan a hacer tal determinación. Por otro lado, la jueza Pagani Padró lleva laborando en la Rama Judicial cerca de veinte *579 años. La propia Administración de los Tribunales reconoció la labor rendida por esta durante estos años, así como “[s]u compromiso y dedicación [que se] refleja [en] el trabajo de calidad que ha realizado”. Además, en la última evaluación de la Comisión de Evaluación Judicial, esta concluyó que la jueza Pagani Padró estaba muy bien calificada, lo que la ubicaba “en un nivel 5 de ejecución, lo cual implica que sus ejecutorias sobrepasan por mucho lo esperado y contribu-yen a proyectar un alto nivel de calidad”. Anejo II de la Contestación a querella, pág. 2. Por otro lado, ella ha reco-nocido que su tardanza fue excesiva y no constituye un ejemplo de cómo se deben tramitar los asuntos judiciales. Todo ello nos lleva a concluir que no adelanta los fines de la Justicia imponerle sanción alguna, por lo que lo correcto es adoptar la norma expuesta de forma prospectiva.

 Previo a que el caso de referencia se le asignara a la jueza Pagani Padró, hubo dos jueces que intervinieron en distintas instancias en este caso. La primera intervención de la jueza Pagani Padró fue en abril de 1991.

 El Ledo. Luis R. Mellado González era el abogado de los demandantes en el caso María Rodríguez Casillas y otros v. Universidad de Puerto Rico y otros, Civil Núm. FDP-90-0309 (Rodríguez Casillas).

 El Ledo. Luis F. Montijo Colón fue el abogado de una de las partes codeman-dadas en el caso Rodríguez Casillas.

 La Leda. Sigrid López González era la abogada de la Universidad de Puerto Rico en el caso Rodríguez Casillas, parte codemandada en este caso.

 La responsabilidad ética que surge de este y de los otros cánones citados comprende las distintas etapas del proceso decisorio, en las cuales los jueces deben utilizar de manera efectiva los mecanismos que tienen disponibles de forma tal que se haga viable la solución justa, rápida y económica de las controversias ante su consideración.

 Hay que distinguir entre un retraso injustificado y uno derivado de factores estructurales o coyunturales ajenos a la responsabilidad del juez.

 Todo abogado que haya litigado sabe que en la litigación de casos complejos, la mayor dilación ocurre durante la etapa previa a la vista en su fondo o juicio. El emplazamiento de múltiples partes, el descubrimiento de prueba documental, la con-fección y contestación de interrogatorios, la toma de diversas deposiciones a las par-tes, la preparación y presentación de mociones dispositivas y sus respectivas répli-cas, etc., son todos asuntos que dilatan el comienzo del juicio en su fondo. En casos complejos o de múltiples partes, este periodo puede durar varios años. Ahora bien, también sabemos que una vez se concluye el juicio, el periodo de espera por la sen-tencia es menor que el que transcurrió desde que se presentó la demanda hasta que comenzó el juicio.
En este caso, desde que se presentó la demanda hasta que comenzó el juicio transcurrió un periodo de tres años. Desde que concluyó el juicio y el caso quedó sometido para que se dictase sentencia, transcurrieron diez años. ¿Cómo es posible que ello se pueda justificar?

 La práctica de solicitar proyectos de sentencia o de determinaciones de he-chos no es una práctica impropia. El Canon 9 de los Cánones de Etica Judicial, 4 L.P.R.A. Ap. IV-B, autoriza tal solicitud como “instrumento auxiliar para los magis-trados del país sobrecargados y agobiados de una carga enorme de causas judiciales”. Báez García v. Cooper Labs., Inc., 120 D.P.R. 145, 157 (1987).